**UNITED STATES of America, Appellant,**

**v.**

**Melvin WILLIAMS, Appellee.**

**UNITED STATES of America, Appellant,**

**v.**

**Glenn Moore HAWKINS, Appellee.**

**Nos. 84–5361, 84–5362.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1985.

Decided Jan. 17, 1985.

**330**

Robert J. Cynkar, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Carroll W. Weimer, Jr., Third Year Law Student on brief), for appellant.

Nelson R. Kandel, Baltimore, Md. (Christopher N. Kandel, Third Year Law Student on brief) and Howard L. Cardin, Baltimore, Md., for appellees.

Before WINTER, Chief Judge, PHILLIPS and MURNAGHAN, Circuit Judges.

1. Erselle Datcher was also indicted and released on a $25,000 unsecured bond. The government has not attacked Datcher's pretrial release.

2. Hawkins previously was indicted in June 1984 for the same offenses. Charges were dropped in August 1984 when the government's key witness recanted his story. Apparently, that witness has now agreed to testify against Hawkins, and the indictment on December 3, 1984 was again returned by the grand jury.

MURNAGHAN, Circuit Judge:

The government has appealed a decision by the United States District Court for the Eastern District of Virginia to release defendants Melvin Williams and Glenn Moore Hawkins on cash or surety bail of $200,000 and $100,000 respectively. Our jurisdiction over the pretrial appeal is conferred by section 3145(c) of the recently enacted Bail Reform Act of 1984, part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 203, 98 Stat.1976, *amending* 18 U.S.C. §§ 3141 to 3151 (1982), which permits the government, as well as the detainee, to appeal from a district court order granting or denying bail. Pursuant to Federal Rule of Appellate Procedure 9(a), the appeal has been heard on an expedited basis.

### I.

On December 3, 1984 Williams and Hawkins were each indicted[1] by a grand jury for violating the federal narcotics laws.[2] Count I of the indictment alleges that Williams and Hawkins, together with other individuals, attempted to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982), and, as part of the drug offense, were engaged in an unlawful business activity, in violation of 18 U.S.C. § 1952(a)(3) (1982).[3] Two days after the indictment was issued, defendants were arrested in Baltimore, Maryland. At the initial appearance, the United States requested a detention hearing pursuant to 18 U.S.C. § 3142(f) (*as amended*).[4]

On December 10, 1984 a detention hearing was conducted by United States Magistrate Klein. At the proceeding, the United

3. The maximum sentence for each defendant, if convicted of all the offenses charged in the four count indictment, would be in excess of ten years.

4. References to 18 U.S.C. § 3141 *et seq.* will be to the newly amended version of the Bail Reform Act.

States introduced the testimony of four government agents, each of whom was subject to cross-examination by defense counsel. Following the hearing, the magistrate entered detailed factual findings on the record. He determined there was probable cause to believe that Williams and Hawkins had committed the crimes set forth in the indictment. The magistrate, however, found no evidence that defendants would flee the jurisdiction if released on bail. Both Williams and Hawkins were found to have strong family ties to the Baltimore community, and each was found to have a good track record for prior court appearances. Nonetheless, bail was not granted because, according to the magistrate, there was clear and convincing evidence that no condition or combination of conditions would "reasonably assure the safety of any other person and the community" if defendants were released before trial. The nature of the offense, defendants' past criminal activities, and the fact that weapons were seized during the arrest, were all considered by the magistrate. *See* 18 U.S.C. § 3142(g).[5] Pursuant to 18 U.S.C. § 3142(e), defendants were detained.

Thereafter defendants were removed to the Eastern District of Virginia, and motions to obtain judicial review of the magistrate's detention order were promptly filed. *See* 18 U.S.C. § 3145(b)[6] On December 21, 1984 the district court entertained the motions but because a full transcript of the proceedings before the magistrate had been prepared, did not conduct an evidentiary hearing. The district judge stated that counsel could introduce proffers of evidence[7] and noted that defendants' entitlement to bail would be considered *de novo*. At the conclusion of the hearing, the district court ruled that defendants were entitled to be released and as noted above fixed bail at $200,000 for Williams and $100,000 for Hawkins.

Recognizing that defendants might promptly post bail, the United States sought a stay of the release order. The district court declined to stay its ruling. An appeal by the United States promptly followed, accompanied by a motion to stay the admissions to bail. On the afternoon of December 21, 1984, a hearing took place (on what was necessarily short notice) to consider the government's motion. On the basis of proffers from the Assistant United States Attorney, I, proceeding as a single judge, convocation of a three member panel being impractical, granted a temporary

---

5. 18 U.S.C. § 3142(g) provides, in pertinent part:

 The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

 (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

 (2) the weight of the evidence against the person;

 (3) the history and characteristics of the person, including—

 (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

 (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

 (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

6. 18 U.S.C. § 3145(b) provides

 If a person is ordered detained by a magistrate or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

7. Evidentiary proffers are approved by 18 U.S.C. § 3142(f). Counsel for Williams did proffer that the United States Parole Board had been approached, but had declined to revoke his parole. The parole officer assigned to Williams, however, recommended detention. Hawkins' counsel made no proffer of a factual nature electing instead to address legal aspects of his client's case.

stay until 12 Meridian on December 24, 1984, so that a transcript of proceedings before the district court could be prepared and reviewed. On December 24, 1984, after considering the entire record, I extended the stay until the appeal could be heard, and encouraged counsel for Williams and Hawkins to request expedition of the proceeding.

On December 28, 1984, defendants filed a motion to quash the stay, relying primarily on the development that findings of fact had been issued by the district court subsequent to the time I had, on December 24, 1984, extended the stay.[8] After reviewing those findings, although extremely hesitant to depart from the facts as found by the district court, I concluded that the stay was proper and should remain in effect.

## II.

The Bail Reform Act of 1984 ("the 1984 Act") marks a major revision in the standards and procedures governing bail. In response to the "alarming problem" of crimes committed by persons on release, Congress has given the federal judiciary increased authority to withhold bail. *See generally* S.Rep. No. 225, 98th Cong., 1st Sess. 3–30 (1983) *reprinted in* 1984 U.S. Code Cong. & Ad.News (98 Stat.) 1. Previously, under the Bail Reform Act of 1966, the exclusive consideration in setting bail was whether the defendant would appear at trial.[9] Now, federal courts have been accorded the power to weigh the risk to the community posed by a defendant's release pending trial.

18 U.S.C. section 3142(e) provides that a defendant may be detained before trial if,

after a hearing, a judicial officer determines by "clear and convincing" evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community." [10] Among the factors to be considered are: (1) the nature and circumstance of the offense charged; (2) the defendant's history and personal characteristics; (3) whether, at the time of the offense, the accused was on probation or parole; and (4) the nature and seriousness of the danger to any person or the community posed by the individual's release. *See* 18 U.S.C. § 3142(g). In addition, the 1984 Act sets up two rebuttable presumptions in particular categories of cases. Section 3142(e) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code.

*See also* 18 U.S.C. § 3142(f)(1). Finally, as noted, the act provides that both the government and the detainee are entitled to appeal a release or detention order.[11]

---

**8.** Although the district court's order was dated December 21, 1984, it was first presented to me on December 28, 1984. In any event, although it was evident that the findings were not filed until after the government had lodged its appeal, they were considered in ruling on the motion of Williams and Hawkins to quash the stay.

**9.** Another statute had dealt with the special problem of cases involving defendants accused of homicide. *See* 18 U.S.C. § 3148 (1982) (repealed October 12, 1984).

**10.** No challenge has been made to the finding that, if released on bail, both defendants would appear at trial. Nothing has been made of the parole status of Williams.

**11.** 18 U.S.C. § 3145(c) provides:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly.

> *See also* S.Rep. at 32.

In light of the breadth of the legislation, in particular the profound transformation in the criminal justice system which undoubtedly will be engendered by the 1984 Act, there is a temptation to be resisted. The temptation is to seize on the present appeal as a vehicle to sketch with a broad brush the particular standards to be applied by district courts. Moreover, as we begin a journey under any new law, a question naturally arises about whether our road will lead us into unconstitutional realms. These are all extremely important considerations, which at some juncture must be faced. However, the law is to be developed case-by-case, with concrete factual situations governing the development of otherwise broad principles of law. Here, we need not gallop frenetically about the countryside.

At oral argument counsel for defendant Hawkins expressed doubts about the constitutionality of the new law. We agree that the 1984 Act poses intriguing constitutional questions. *See Bell v. Wolfish*, 441 U.S. 520, 534 n. 15, 99 S.Ct. 1861, 1871 n. 15, 60 L.Ed.2d 447 (1979) (Supreme Court left open the question of whether any governmental objective other than assuring an individual's presence at trial may justify pretrial detention); *Schall v. Martin*, — U.S. ——, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (upholding constitutionality of New York preventive detention statute as applied to juveniles). However, none of these questions relating to alleged unconstitutionality have been fully briefed or argued by the litigants.

A careful examination of Hawkins' brief indicates that his constitutional attack is narrowly aimed at the rebuttable presumptions created by the statute. That issue is not ripe for consideration on the present record. Although the government has attempted to take advantage of the danger-

ousness presumption created by 18 U.S.C. § 3142(e) and (f)(1)(C), it has not in the end rested its case on a presumption. To the contrary, the government's position is that the factual findings by the district court are clearly erroneous because affirmative evidence was introduced to substantiate the claim that no set of conditions will reasonably assure the safety of other persons or the community. Consequently, we need not and do not address whether, or in what circumstances, the presumption is constitutional. Instead, our focus narrows to the question of whether the district court's decision was clearly erroneous.[12] We find that it was.

At the outset we note that our review, hard on the heels of the passage of the 1984 Act, is plagued by the absence of detailed factual findings by the district court. Moreover, although the motion for review of the magistrate's detention order, pursuant to 18 U.S.C. § 3145(b), technically was transformed into a *de novo* detention hearing under section 3142(f), no additional evidence on the issue of dangerousness or lack thereof was introduced.

The evidence, as presented to the magistrate and transcribed for the district court, contains substantial and convincing proof that defendants are veteran drug traffickers associated with a criminal organization. Direct evidence established that both defendants have prior felony convictions for conspiring together in 1975 to distribute heroin. Both defendants have prior convictions of offenses involving dangerous weapons. At the time of Williams' arrest $30,000 in cash was found in his home, along with two weapons, one of which was stolen. It should also be emphasized that Williams was on parole for a prior drug trafficking conviction making it unlawful for him to possess a firearm. When Haw-

---

**12.** We accept the legal proposition that the district judge, being an Article III judge while the magistrate is not (*see United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)) should, as between the two, be accorded far greater deference. However, the deference cannot be total, it cannot insulate from correction findings supported by no evidence or by evidence so lacking in merit as to render the district judge's decision clearly erroneous. Otherwise, any possibility of success by the United States on appeal of an order admitting to bail would be eliminated. That would be a conclusion incompatible with the specific statutory provision calling for a right of appeal in the United States. 18 U.S.C. § 3145(c).

kins was arrested, although he was unemployed, $5,000 in cash was found in his possession along with a "telecommunications beeper" which was linked to Williams.[13]

The direct evidence was corroborated by government agents, who, testifying on the basis both of personal knowledge and hearsay from informants, provided details of a criminal organization headed by Williams. Hawkins was described in the testimony as a top lieutenant, drug runner, and enforcer for Williams. The nature of the offense charged in the indictment lends further credence to the government's position that the defendants are major drug dealers. Williams was said to have supplied $100,000 in cash for four kilos of cocaine. Hawkins delivered the cash in a briefcase to an individual who was arrested in Virginia attempting to purchase drugs from DEA agents. Hawkins' palmprint has been located on a briefcase, seized from his car. Tests revealed that the briefcase had residue of chemicals commonly used as cutting agents for narcotics.

Evidence was also adduced that Williams' organization had a history of violence and obstruction of justice. Hearsay testimony indicated that Williams had ordered the murder of Harrison Colvin in 1979 and had proposed to bribe a judge to obtain the release of a member of the drug network. Circumstantial evidence linked Williams to an April 1984 shooting of Charles Frazier, an individual who had agreed to cooperate with the on-going investigation of Williams.[14]

No evidence, by proffer or otherwise, was introduced to contradict the government's presentation. Defense counsel ably cross-examined the government witnesses in an attempt to cast doubt on the credibility of the information gleaned through informants. In particular, it was asserted that several of the informants had prior records or were on parole and that the major government witness had struck a deal with the government. Further, it was established that the government witness initially implicated Hawkins, recanted, and then once again agreed to testify.[15]

In finding that there was no clear and convincing evidence against the defendants, the district court agreed with the magistrate "that the evidence against the defendants is substantial." The district court rejected the government's showing because the evidence was "dependent to a large extent upon the testimony of informants who are either on parole or have made agreements with the government, or both." Ordinarily, the district court's assessment of testimony will definitively resolve a defendant's entitlement to bail. Moreover, in most cases, a trial court's review of a transcript of proceedings would, either as part of a *de novo* detention hearing, or as part of a review of a detention order under 18 U.S.C. § 3145(b) be sufficient to withstand appellate review.

---

**13.** Although we agree that the quantum of evidence against Hawkins is somewhat less than that against Williams, we find that, on the record as it has been developed, it was clearly erroneous to disregard the overwhelming direct evidence developed in the hearing before the magistrate. The district court found that the evidence against Hawkins was rather indirect, but Hawkins' long-standing criminal association with Williams and his participation in continued drug offenses, consists of more than informant hearsay. As noted above, both men were convicted together in 1975 of conspiring to distribute heroin, and government agents testified from personal knowledge that Hawkins and Williams had close ties. Hawkins' potential for violence was further corroborated by his prior firearms conviction.

**14.** The testimony indicated that somehow Williams had obtained a copy of the plea agreement between Frazier and the United States.

**15.** Hawkins' counsel argued that, following the first indictment, *see supra* n. 2, Hawkins had committed no crimes and thus had proven he was not a danger to the community. However, the Bail Reform Act was enacted in the interval between the two indictments, so the test is now substantially different than it was in August, 1984. There has been no assertion of any kind that the government dropped the first indictment and secured the reindictment to gain the benefits of the new law.

Yet in the instant case we have no occasion to consider, and consciously make no effort to decide, whether, in the face of hearsay alone, albeit substantial and essentially unrebutted informant hearsay advanced by the government, the total discounting of the hearsay testimony would be sufficient to support the district court's opinion. The district judge took an essentially negative "there is no persuasive evidence" approach rather than a "the evidence to the contrary is more persuasive" tack. Whether that approach would suffice when the evidence was all informant hearsay is another question for another day.

A complete review of the record, however, indicates that, independent of any hearsay testimony, there was clear and convincing evidence of defendants' dangerousness; particularized evidence of defendants' history of drug trafficking was documented by prior felony convictions, entirely apart from the testimony of government agents. In addition, both men had prior convictions involving weapons, and, at the time of Williams' arrest, two handguns were uncovered in his home. These are not individuals charged with a first offense, nor are they individuals with no history indicative of a predisposition to violence.

The district court also applied an improper legal standard, concluding that substantial evidence of on-going narcotics offenses—which the record demonstrates has persisted despite prior drug convictions and parole supervision—is not a danger to be considered. In the crucial finding, the district court wrote:

The court finds that while the evidence of the defendants involvement in drugs, particularly the defendant Melvin Williams, is substantial, there has not been shown by clear and convincing evidence that these defendants pose any greater risk to the safety of the community than any other drug dealer. And while drug dealing is to be abhored, [sic] unless the court is going to detain pretrial all alleged drug dealers, the fixing of bail, conditioned as above set forth, will adequately protect the community from these defendants during the brief time between now and the trial date of February 5, 1985. In making this finding the court is aware of the presumption set forth in 18 U.S.C. § 3142(e).

The court's concern with the automatic detention of persons accused of drug offenses is one with which we would, perhaps, be disposed to agree if it were before us, particularly if the statute is to be interpreted in a manner consistent with the Constitution. The legislative history of the Act, however, is clear that the concern about safety was intended to "be given a broader construction than merely danger of harm involving physical violence." S.Rep. at 15. The risk that a defendant will continue to sell narcotics was repeatedly cited as an example of a danger to the "safety of any other person or the community." *Id.* at 16, 22–23.

It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

*Id.* at 23. In rejecting altogether the uncontroverted evidence of defendants' drug involvement, we find that the district court did not sufficiently consider legislative intent.

In sum, the district court found there was substantial evidence that the defendants have been involved in drug trafficking for many years, but, contrary to explicit legislative intent, discounted the fact that danger to other persons or the community is established when there is clear and convincing evidence that defendants would continue to be involved in narcotics if released on bail. They have already done so despite convictions and parole supervision. In light of defendants' criminal records established by direct proof, and not merely by hearsay, the court's finding was clearly

erroneous. Assuming that the district judge was within bounds in discounting all informant hearsay, the record, nevertheless, contains direct evidence that defendants pose a danger. In large measure it was not discussed by the district court. In the circumstances of the instant case, considered in the round, a result so arrived at is, in the applicable legal phraseology, "clearly erroneous."

REVERSED.