**UNITED STATES of America, Plaintiff,**

v.

**Michael KNIGHT, Roy Lee Hawkins, Barry Rex Harris and Richard Joseph, Defendants.**

**No. 86–322CR.**

United States District Court, S.D. Florida, Miami Division.

June 6, 1986.

Eileen O'Connor, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Robert Beatty (Knight) Larry Hanfield (Harris) Miami, Fla., Brett Panter (Hawkins) Coral Gables, Fla., Jay Levine (Joseph) Miami, Fla., for defendants.

## MEMORANDUM OPINION

SCOTT, District Judge.

Pursuant to 18 U.S.C. 3145(b) the Defendants, Richard Joseph, Michael Knight, Roy Lee Hawkins and Barry Rex Harris, Move for Revocation of Detention. Each Defendant has been ordered detained under the authority of 18 U.S.C. 3142, by the U.S. Magistrate, upon a finding that no conditions or combinations of conditions could reasonably assure the safety of the community.[1] This Court, having original jurisdiction, will review each Defendant's case individually as dictated by the teachings of *United States v. Hurtado*, 779 F.2d 1467 (11th Cir.1985).

## GENERAL OVERVIEW

The original indictment charging Richard Joseph and the superseding indictment naming Defendants Knight, Harris and Hawkins charges each with crimes relating to the drug laws.[2] The Government alleges that the Defendants are members of an ongoing, violent criminal organization involved in the distribution of heroin and cocaine. The Government's proffer of evidence includes homicides attributable to the organization, warnings not to testify and cooperate, and distribution of heroin even after the initial indictment. Each Defendant faces incarceration anywhere from forty years to life incarceration. In summary, the seriousness of this case can not be underplayed.

## RICHARD JOSEPH

Joseph is characterized as the head of this criminal organization which dates back to 1980. The evidence against Mr. Joseph runs the gauntlet of evidentiary types including direct evidence by an accomplice(s), documentary, tapes and circumstantial. It appears as though the Government has a

---

1. "The defendant is a member of a heroin organization that is of long term duration and is ongoing. The organization is violent by nature. This defendant's involvement is such that he is a danger to our community." Smargon, J. order dated 5/27/86. For the purpose of this Order, the terms "dangerousness" and "safety of any other person or the community" will be used interchangeably.

2. In addition, the indictment charges Richard Joseph with a continuing criminal enterprise.

very good case and that defense counsel has his work cut out for him.

■ In any case, notwithstanding this independent finding of probable cause, the indictment by itself establishes probable cause to believe the Defendant committed the offense charged and triggers the presumption that the Defendant constitutes a danger to the community and poses a risk of flight. *United States v. Hurtado, supra; United States v. Contreras,* 776 F.2d 51, 52, 54–55 (2nd Cir.1985); and *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985). However, it should be noted that the statutory presumptions impose only a burden of production on defendants and do not shift the burden of persuasion concerning risk of flight and dangerousness. *United States v. Jessup,* 757 F.2d 378, 381–384 (1st Cir.1985); and, *see, United States v. Hurtado, supra.*

In the present case, the Government has established by the presumption plus independent evidence that probable cause exists and that the crimes charged include a maximum term of imprisonment of ten years or more as prescribed in the Controlled Substance Act. *See,* 18 U.S.C. 3142(f); and, *United States v. Hinote,* 789 F.2d 1490 (11th Cir.1986).

■ The burden of production now shifts to the Defendant. *United States v. Jessup, supra.* The additional statutory factors which must now be considered to rebut the presumption are elaborated in 18 U.S.C. 3142(g). The Court has engaged in *de novo* review of these factors, *see, United States v. Hurtado, supra,* based on the proffer and evidence. The Court finds that the Defendant has failed to overcome the presumption and that there are no conditions which will assure the safety of the community. In addition, the Court finds that there is no condition which will assure Mr. Joseph's presence at trial, a finding not made by the Magistrate but which is now established in light of the superseding indictment and subsequent pretrial events

---

**3.** The Government, throughout these proceedings, has contended that the focal point of the conspiracy was My Children's Place which was used as a major source of sale and distribution.

---

surrounding the case. *United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir. 1985). (It is important to note that the clear and convincing standard applies to a finding of dangerousness, but a preponderence of the evidence standard applies to flight.)

The Court's findings as to each of the statutory factors has been discussed above. However, it should be supplemented with the Defendant's prior criminal record. Mr. Joseph's criminal history dates back almost twenty years and includes aggravated battery, manslaughter and firearm's possessions. Most recently, this Court, when it was a state court judge, adjudicated and sentenced Mr. Joseph for trafficking in cocaine. He was paroled in August, 1984. It is of no little interest that the present indictment pre-dates, encompasses, and post-dates these charges.

In conclusion, the purpose and intent of 18 U.S.C. 3142 is met in the present case by the detention of Defendant Richard Joseph. Accordingly, the Magistrate's order is affirmed, with the further provisions dictated in 18 U.S.C. 3142(i)(2–4) concerning incarceration, access by counsel, etc.

## MICHAEL KNIGHT

■ The Government characterizes Michael Knight as the general manager of the Joseph organization. The Government proffers that as Joseph's trusted lieutenant, he ran the drug business, whether Joseph was in or out of jail. The Government labels him as a danger to the community and a flight risk.

Michael Knight responds that he has strong community ties dating back twenty-five years. Prior to his arrest, Knight was employed at My Children's Place grocery store.[3] He attended public schools in Miami and Bethune-Cookman College in Florida. The Defendant has never been convicted of a crime. He has family and friends who will support him.

---

In effect, the Government contends that Knight ran the store for Joseph; and, in turn, the store was the center of the network.

Knight contends that this record does not support detention. Additionally, Knight "objects to his detention on the ground of dangerousness to the community as it constitutes a violation of his right to liberty pursuant to the Eighth Amendment, his right to Due Process pursuant to the Fifth Amendment and his Fifth Amendment, U.S. Constitution right against self incrimination." (Knight Memorandum of Law, p. 2). Defendant points to *United States v. Melendez-Carrion,* 790 F.2d 984 (2nd Cir.1986).

A discussion of Mr. Knight's case necessarily involves a consideration of the legislative intent of the Congress in enacting the provisions of the Bail Reform Act of 1984. *United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985). The legislative history of Section 3142 changed prior law by including dangerousness as a factor to be considered in determining pretrial release. *Report of the Senate Committee on the Judiciary,* S.Rep. No. 98–225, 98th Cong., 2nd Sess. (1984 U.S.Code Cong. & Ad.News. p. 3182–3219). The new law sought to enhance the tools with which a judge could make a decision regarding denial of release.

The Senate Report provides:

In sum, the committee has concluded that pretrial detention is a necessary and constitutional mechanism for incapacitating, pending trial, a reasonably identifiable group of defendants who would pose a serious risk to the safety of others if released. *Id.* at 3192–3193.

The Senate Report then proceeds to elaborate on the type of conduct which was intended to be viewed as dangerous:

The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. This principle was recently endorsed in *United States v. Provenzano and Andretta,* in which it was held that the concept of "danger" as used in current 18 U.S.C. 3148 extended to nonphysical harms such as corrupting a union. The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community." *Id.* at 3195–3196.

It is therefore clear that the intent of the Legislature was to afford great flexibility to the judicial officer in deciding the question of detention.

█ Since the enactment of Section 3142, there has been relatively little judicial guidance in interpreting dangerousness. *See, United States v. Melendez-Carrion, supra; United States v. Bayko,* 774 F.2d 516 (1st Cir.1985); *United States v. Chimurenga,* 760 F.2d 400 (2nd Cir.1985); *United States v. Sierra,* 622 F.Supp. 1034 (S.D.Fla. 1985); and, *United States v. Ridinger,* 623 F.Supp. 1386 (W.D.Mo.1985). Of interest for the purpose of our discussion is the case of *United States v. Williams,* 753 F.2d 329 (4th Cir.1985). Chief Judge Murnaghan, speaking for the Court, recognized that the Bail Reform Act of 1984 makes a major revision in the standard and procedure governing bail in response to the "alarming problem" of crimes committed by persons awaiting trial. *Id.* at 332. More relevant to the case at bar, *Williams* states:

The legislative history of the Act, however, is clear that the concern about safety was intended to "be given a broader construction than merely danger of harm involving physical violence." (Cite omitted) The risk that a defendant will continue to sell narcotics was repeatedly cited as an example of a danger to the "safety of any other person or the community." *Id* at 335.

This discussion of the applicable authority brings us back to the case at bar.

Initially, this Court is constrained to observe that it is opposed to any construction of Section 3142 which results in automatic detention of Defendants charged with drug related crimes. Such an "ipso facto" interpretation would result in large scale detentions and raise obvious constitutional ramifications. See, *United States v. Melendez-Carrion, supra,* and, *United States v. Williams, supra.*[4] Each case must be considered on its own merit, while affording the trial judge the flexibility noted above. Here, several considerations clearly establish that Defendant Michael Knight falls within the category of that "... reasonably identifiable group of Defendants who would pose a serious risk to the safety of others if released." *Senate Report, supra,* at 3192–3193.

First, the nature of the criminal organization and the Defendant's involvement establish narcotic trafficking of a major dimension. The organization dates back to 1980 and has involved itself with large quantities of heroin, which is a killer narcotic. Defendant Knight's involvement was not that of a minor participant but a major player. *See, United States v. Williams, supra.*

Second, the Government charges that weapons and possibility of violence were an integral part of the Joseph organization. *United States v. Bayko, supra,* at 521; but, *see, United States v. Ridinger, supra.* During the search of My Children's Place, agents found two handguns, one of which had an obliterated serial number. It is important to recall that Knight managed the store and, in fact, was arrested there. The Government further asserts that the organization is violent and states, "The Government is aware of at least two drug related homicides attributable to the organization." (Government memorandum of law, p. 2).

Third, even after Joseph's arrest and confinement at Miami Correctional Center, the organization continued to flourish and Knight managed it. The Government has numerous taped drug related conversations four of which occurred subsequent to Joseph's arrest and incarceration. Moreover, the Government has three separate heroin exhibits which were purchased from Knight, the largest being four ounces. In light of the fact that Knight continued to play an integral role in the sale of narcotics even after the arrest of Joseph, it is reasonable to assume that Knight would continue do so if released. *United States v. Williams, supra.*

Fourth, this case has been plagued by a series of pretrial activities which are, at best, disturbing, and, at worst, an affront to our judicial system. These events include, in the Government's viewpoint, subtle warnings not to testify or cooperate, revolving defense counsel, and, in general, an attempt to obstruct justice. The Government argues that a release of Knight will set the stage for a continuation of such activity. The Government cites Knight's managerial role. In particular, the Government points to the continuation of criminal conduct and the obstructive activities following Joseph's arrest while Knight managed the organization. The Government buttresses this contention with a documented four to six telephone calls per day from Miami Correctional Center to My Children's Place. The obvious inference is that Joseph from jail spoke daily to Knight at the store in a continuation of their criminal purpose. Certainly, such conduct must be visited upon Knight and plays a realistic consideration in this Court's determination of pretrial detention. *United States v. Williams, supra;* and, *see, United States v. Decker,* 543 F.2d 1102 (5th Cir.1976) (Theory of vicarious liability is applicable in narcotics distribution conspiracies). As in Joseph's case, this Court has conducted the appropriate de novo review by employing the required two-prong

4. "The Court's concern with the automatic detention of persons accused of drug offenses is one with which we would perhaps, be disposed to agree if it were before us, particularly if the statute is to be interpreted in a manner consist-

process.[5] I conclude that the Government has met its burden.

Wherefore, this Court finds that the Government has established by clear and convincing evidence that the Defendant Michael Knight should be detained pursuant to 18 U.S.C. 3142. It is further ordered that Knight should have the benefit of 3142(i)(2–4) as to terms of incarceration and availability of counsel. In light of the Defendant's claimed medical condition, reasonable health care will be provided.

### ROGER LEE HAWKINS

■ The Government characterizes Roger Hawkins as a dealer and "cutter" for the Joseph organization. His ties to the heroin trade are documented as far back as the late 1970's. According to the Government, these assertions are supported by Hawkins' rap sheet, recent cocaine arrest, and the undercover video taped negotiations and sale of heroin. Hawkins identified Joseph as the source for the heroin.

The Defendant counters arguing that while the evidence against the Joseph organization is strong, the evidence linking Hawkins to this organization is weak. Further, the Defendant points out that while Hawkins' rap sheet is strong on arrests, it is weak on convictions.

Hawkins buttresses his position by pointing to his strong community ties. The Defendant has resided in Miami most of his life. He is married and has two children. Hawkins has never left the United States and does not possess a passport.

Whether Hawkins falls within the category of that identifiable group of Defendants who pose a danger to the community presents a "close question". However, exercising the flexibility this Court is afforded, and, in keeping with the intent of 3142(b) that the least restrictive condition should be imposed, this Court concludes that the Government has failed to meet its burden as to this Defendant under the appropriate criteria. 18 U.S.C. 3142(g). The pretrial detention order of the Magistrate is reversed and reasonable conditions of release will be set, 18 U.S.C. 3142(c), as follows:

(a) A corporate surety in the amount of $50,000.00 is set with *Nebbia.*

(b) No contact with any co-defendant, their agents or place of residence or business.

(c) No firearms or weapons will be allowed in Defendant's possession, home, car or within his dominion or control.

(d) No narcotics will be taken. Testing will be performed. If indicated, Defendant will enter a drug program. Reports will be submitted to the Court.

(e) Defendant will reside at his residence.

(f) Defendant will be permitted to travel to his place of employment, church and attorney's office. In all other respect, Defendant will remain under house arrest.

(g) DEA agents and local law enforcement agencies will have the right to phone or otherwise reasonably contact the Defendant to determine his whereabouts. If Defendant or his family or attorney cannot specify his location, law enforcement officers will have the right to arrest the Defendant forthwith and hold him until judicial review.

(h) Defendant will be fully advised of the consequences of his failure to abide by these conditions.

### BARRY REX HARRIS

■ Review of the detention order of Barry Rex Harris is relatively easy in com-

---

ent with the Constitution." *United States v. Williams, supra, at 335.*

**5.** "Section 3142(e) requires two separate findings. First, a judicial officer must find that there is probable cause to believe that the defendant has committed one of the designated offenses. Second, that probable cause finding triggers the dangerousness to the community presumption, and a separate finding regarding that provision, under a different standard, must be made. A separate due process analysis is required for each finding" *United States v. Perry,* 788 F.2d 100 (3rd Cir.1986).

parison to the other Defendants. Harris is a dealer. The Government's evidence against Harris is two heroin buys by agents, one is on video.

A review of Mr. Harris's background reveals that he is a native of Miami and has lived here all of his life. Prior to his arrest, he was employed at Jackson Memorial Hospital. He is married to a former probation officer for the State of Florida. She is presently employed as a postal worker for the United States Government. Lastly, Mr. Harris has never been arrested or charged with any crimes.

In summary, Harris is a small dealer who probably has a substance abuse problem. He has strong community ties and no prior history of arrests.

In this Court's viewpoint, this Defendant is not detainable under Section 3142 as a safety risk to the community. Moreover, the Government has failed to establish that he is a flight risk. Wherefore, the pretrial detention order of the Magistrate is reversed, and reasonable conditions of release are set as follows:

(a) Corporate surety in the amount of $25,000.00 is set with *Nebbia.*

(b) No contact with any co-defendant, their agents or place of residence or business.

(c) No narcotics will be taken. Testing will be performed. If indicated, Defendant will enter a drug program. This will be established by pre-trial services. Reports will be submitted to the Court.

(d) Defendant will be placed in the custody of his wife who will act as a custodian for her husband. The wife will execute a custody release prepared by defense counsel and approved by the Government. She will be explained her responsibilities and the consequences including the contempt power of this Court.

(e) Defendant will reside at his residence and not leave Dade County.

(f) DEA agents and local law enforcement agencies will have the right to phone or otherwise contact the Defendant to determine his whereabouts. If Defendant or his custodian is unable to give his exact location, law enforcement officers will have the right to arrest the Defendant forthwith and hold him until judicial review.

(g) Defendant and custodian will be advised of the consequences of his failure to appear for Court.

## CONCLUSION

This case presents a unique opportunity to apply Section 3142 to a broad panorama of criminal culpability. In rendering this decision, the Court has attempted to perceive the intent of Congress and apply it in an even handed manner, balancing the Government's interest to safeguard the community with the Defendants' presumption of innocence. The dearth of law and the importance of the issues cries out for appellate resolution. I wholeheartedly urge either the Government or the Defendants to seek review. In the interim, it is hoped that this decision is a step in the right direction.[6]

---

**6.** One last contention need be addressed. Defendant Knight raises a vague constitutional attack based on the denial of his right to liberty, due process and self-incrimination. No detailed argument was provided either orally or in his memorandum. No authority was provided except reference to *United States v. Menendez-Carrion, supra,* cited above, which is easily distinguishable. Here, there is no eight month deten-

tion. This Court has been and is prepared to try these cases. Indeed, several of the Defendants in the initial indictment have already pled or been tried and convicted. In any case, this Court rejects any constitutional attack based on the facts of this case. *United States v. Perry,* 788 F.2d 100 (3rd Cir.1986); *see, also, United States v. Wind,* 527 F.2d 672 (6th Cir.1975); and *United States v. Gilbert,* 425 F.2d 490 (D.C.Cir.1969).