**UNITED STATES of America**

v.

**Jimmy Lee JEFFRIES a/k/a "Big Jim".**

**Crim. No. 87–36–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 11, 1988.

Miriam D. Duke, Macon, Ga., for plaintiff.

Victoria D. Little, Decatur, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

In thirteen counts of a thirty-four count indictment brought on December 10, 1987, defendant Jimmy Lee Jeffries was charged with several violations of federal law involving the sale and distribution of marijuana and cocaine, conspiracy to commit same, and the violation of federal income tax laws. On December 21, 1987, a hearing was held before Claude W. Hicks, Jr., United States Magistrate, on the United States' motion for an order for pretrial detention of defendant. The magistrate issued such an order on that day, finding that defendant should be detained because he posed a threat to the safety of the community. On January 27, 1988, defendant appealed the magistrate's order of detention and moved this court to grant defendant reasonable bail pending trial. This court heard defendant's motion on February 5, 1988.

The parties presented little live testimony at this second hearing, instead relying upon the transcript of the December 21, 1987, detention hearing and upon certain exhibits presented to the court. The hearing before this court consisted in large part of oral argument addressing alleged procedural irregularities and alleged errors of law.

Defendant's motion raises numerous questions about the mechanics of the Bail Reform Act of 1984. *See* 18 U.S.C. § 3141, *et seq.* Therefore, this court will engage in an examination of the procedures described in that Act while also conducting a *de novo* review of all of the facts submitted to the court.

18 U.S.C. § 3145(b) permits an individual ordered detained by a magistrate to file, "with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." This court, as the court having original jurisdiction over the offenses alleged in the indictment, treats defendant's motion, captioned as an "Appeal of Magistrate's Order of Detention," as such a motion.

The Bail Reform Act does not directly address the proper scope of review when a district court reviews a magistrate's bail decision. However, the Eleventh Circuit, like most circuits which have addressed the question, has held that the district court must conduct a *de novo* review of the magistrate's denial of bail. *United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir. 1987), citing *United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985). *See also United States v. Delker,* 757 F.2d 1390 (3rd Cir. 1985); *United States v. Leon,* 766 F.2d 77 (2nd Cir.1985). "[D]e novo review requires the court to exercise independent consideration of all facts properly before it and to include written findings of fact and a written statement of the reasons for detention." *Gaviria,* 828 F.2d at 670, citing *Hurtado,* 779 F.2d at 1480–81.

In conducting this *de novo* review, the court is cognizant that section 3142 altered prior law in this area by adding as a factor in the detention determination "the nature and seriousness of the danger to the community that would be posed by the person's release." 18 U.S.C. § 1342(g). *See Leon,* 766 F.2d at 80. In fact, where a detention hearing is conducted pursuant to 3142(f)(1)(C),[1] as was the detention hearing in this case, a rebuttable presumption arises which provides that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). *Cf. Hurtado,* 779 F.2d at 1469 (upon showing of probable cause that a defendant committed certain drug-related offenses the statute creates a rebuttable presumption that the defendant would flee if released).

---

1. Subparagraph (C) of section 3142(f)(1) requires a detention hearing upon motion of the United States attorney in a case that involves "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801, *et seq.*)...."

The indictment in this case, in which defendant was charged with numerous violations of 21 U.S.C. § 841(a)(1),[2] "establishes probable cause to believe the defendant committed the offense[s] charged and triggers the presumption that the defendant constitutes a danger to the community...." *United States v. Knight*, 636 F.Supp. 1462, 1465 (S.D.Fla.1986); *Hurtado*, 779 F.2d at 1477. The Senate Report discussing the Bail Reform Act described this new concept of dangerousness by the phrase "safety of any other person or the community." S.Rep. No. 225, 98th Cong., 2nd Sess. 12, *reprinted in* 1984 U.S.Code Cong. & Ad.News, 3182, 3195. The Senate Report continues as follows:

> The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or a witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.

*Id.* at 3195–96, quoted in *United States v. Knight*, 636 F.Supp. at 1466; *Leon*, 766 F.2d at 81 (harm to society caused by narcotics trafficking encompassed within "dangerousness"). Factors which courts have identified as relevant to determinations of dangerousness include the following: the seriousness of the charge; defendant's criminal history; presence of threats of violence or intimidation or other acts tending to obstruct justice; the nature of the criminal organization; place of defendant in organization's heirarchy; ongoing criminal activity despite arrests within criminal organization; and evidence of violence within criminal organization. *See Knight*, 636 F.Supp. at 1467–68; *Delker*, 757 F.2d at 1400; *United States v. Acevedo–Ramos*, 755 F.2d 203, 205 (1st Cir.1985).

 However, the court must make determinations of dangerousness and decisions regarding detention on a case-by-case basis. *Hurtado*, 779 F.2d at 1478; *Knight*, 636 F.Supp. at 1467. "[T]he fact that the defendant is charged with an offense described in subsection (f)(1)(A) through (C) is not, in itself, sufficient to support a detention order." *Hurtado*, 779 F.2d at 1477, quoting 1984 Code Cong. & Ad.News at 3182, 3204. The burden of persuasion remains on the government. *Id.* at 1478. "[T]he government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail, foreclosing any further discussion. Rather, the defendant still must be afforded the opportunity for a hearing at which he may come forward with evidence to meet his burden of production...." *Id.*; *see also Knight*, 636 F.Supp. at 1465. At such hearing, the government must establish by clear and convincing evidence that the defendant is one of the rare individuals warranting detention. 18 U.S.C. § 3142(f); *see Knight*, 636 F.Supp. at 1465; *United States v. Ridinger*, 623 F.Supp. 1386, 1394–95 (W.D.Mo.1985); *Acevedo–Ramos*, 755 F.2d at 208–09. *Delker*, 757 F.2d at 1397; *Leon*, 766 F.2d at 81.

Further, the dangerousness of a defendant is not the only factor which a judicial officer must consider when deciding the detention question. Section 3142(g) has identified three other factors worthy of consideration. These factors include the following:

---

**2.** This section reads as follows:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

The court notes that marijuana and cocaine are controlled substances, and the penalty for violation of section 841(a)(1) is a sentence not less than ten years. *See* 21 U.S.C. § 841(b).

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person; and

(3) the history and characteristics of the person, including (A) the persons's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law....

18 U.S.C. § 3142(g). These factors become relevant both when evaluating whether defendant has rebutted the presumption of dangerousness arising from the indictment and when determining whether the government has met its burden of persuasion. *Knight,* 636 F.Supp. at 1465.

To rebut the presumption of dangerousness arising from the nature of the offense, defendant presented numerous witnesses at the initial hearing before the magistrate, witnesses whose testimony has been transcribed and made a part of the record of this hearing. Those witnesses testified that they had no knowledge that defendant had been engaged in criminal activity, that they had never known defendant to be a violent person, and that they did not believe defendant would either threaten a witness or commit a crime if he was released. On February 5, 1988, Mrs. Sarah Williams, wife of defendant's business partner and a neighbor of defendant, testified similarly. Mrs. Williams, who has three children living at home, further testified that defendant's presence in the neighborhood would not arouse fear or anxiety in the community.

Other evidence identified defendant as hard-working, religious and reliable. Defendant's wife testified regarding his medical condition of diabetes, and she informed the court that defendant was presently on and should remain on a strict diet.

Timothy A. Shaw, Special Agent of the Federal Bureau of Investigation, testified before the magistrate. This testimony established that defendant has a record of criminal convictions involving violation of federal and state liquor laws. These convictions occurred in 1958–1960. Defendant has had no criminal conviction since 1960. Special Agent Shaw also testified that numerous firearms were discovered in defendant's home during a search conducted on December 5, 1986. These weapons form the basis for state charges against defendant on two counts of possession of firearms by a convicted felon. Additional testimony from Special Agent Shaw indicated that other firearms were discovered at defendant's residence at the time of his arrest. He also relates that a handgun was purportedly found in defendant's pants pocket at the time of his arrest. Over defendant's hearsay objection, Special Agent Shaw also testified that defendant had been hospitalized for abuse of a controlled substance.

On cross-examination, Special Agent Shaw admitted that the state weapons charges have not been vigorously prosecuted and that the charges are still pending. In defendant's motion submitted to this court, defendant presented strong arguments indicating that insufficient evidence existed to sustain a conviction.[3] Special Agent Shaw confirmed that no weapons charges have been brought against defendant by the United States.

---

**3.** Special Agent Shaw's testimony reflected that the state charged defendant with the weapons violations based on his status as "head of the household." Recent Georgia cases cast doubt upon the validity of the "head of the household" concept. *See Smith v. State,* 180 Ga.App. 657, 350 S.E.2d 302 (1986); *Dawson v. State,* 183 Ga.App. 94, 357 S.E.2d 891 (1987); *Nations v. State,* 177 Ga.App. 801, 341 S.E.2d 482 (1986); *Bing v. State,* 178 Ga.App. 288, 342 S.E.2d 762 (1986). The court does not make a specific finding on the viability of the state charges. It merely notes defendant's arguments as those arguments bear upon the strength of the government's motion for detention.

The magistrate found that the allegations contained in the federal indictment, the allegations prompting the detention hearing, evidenced continued criminal activity while on release on bond on the state weapons charges. This propensity for criminal activity while out on bond and after the December 5, 1986, search of his home prompted the magistrate to determine that defendant would continue criminal activities, thus posing a danger to the community. Thus, the magistrate held, defendant has not rebutted the presumption that he is a danger to the community.

■ In cases such as this one, where there has been no evidence of defendant's use of violence to carry out the alleged criminal activities for which he has been indicted, this court finds that the evidence regarding the weapons and the State charges based thereon to be of minimal relevance. Further, the court notes that "[t]he number of defendants that carry and collect guns in connection with their controlled drug substance activity cannot fairly" be called a limited group of offenders. *See Ridinger*, 623 F.Supp. at 1393. To detain each of those individuals would be contrary to the legislative history of the Bail Reform Act, which remarks that the courts must be given the power to deny release pending trial only to the "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." 1984 Code Cong. & Ad.News at 3182, 3189. The possession of guns, then, standing alone, cannot be said "to constitute clear and convincing evidence sufficient to support the entry of a detention order on grounds of dangerousness...." *Ridinger*, 623 F.Supp. at 1392. Also, the court points out that actions occurring prior to this indictment, while perhaps relevant to defendant's breach of bond, cannot serve as the predicate for a finding of continued criminal activity after the indictment. In considering dangerousness in a narcotics case situation, the focus should be on future conduct. Moreover, in narcotics cases, the "danger to the community" envisioned by the statute means the threat that defendant will continue to traffic in drugs. *See, supra,* text p. 4. No evidence was presented indicating that such continued trafficking would occur.

Special Agent Shaw identified Mr. Willie Chains, an Atlanta businessman, as the source of the government's information regarding defendant's drug abuse problems. Special Agent Shaw did not speak with Mr. Chains, nor did he identify any individual who did speak with Mr. Chains. Special Agent Shaw has such knowledge based upon his reading of Chains' testimony before the grand jury which returned this indictment. Special Agent Shaw admitted that he had neither spoken with defendant's doctors nor made any investigation of defendant's health.

■ That the evidence presented by Special Agent Shaw regarding defendant's drug abuse constitutes hearsay does not present a problem in detention hearings. "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f).[4] However, the judicial officer should make efforts to determine the reliability of such hearsay. *Acevedo–Ramos,* 755 F.2d at 207; *Ridinger,* 623 F.Supp. at 1400–01. Defendant, on cross-examination, cast doubt upon the credibility of Mr. Chains' and upon the accuracy of the government's evidence. In such a situation prior to the enactment of the Bail Reform Act, the judicial officer was vested with the power and jurisdiction either to insist upon live testimony or to require the government to establish in some manner the reliability of hearsay information.[5] The Bail Reform

---

**4.** *See Acevedo–Ramos,* 755 F.2d at 206–08, for a thorough discussion of the admissibility in detention hearings of hearsay and other investigatory descriptions of evidence. *See also Riding-* er, 623 F.Supp. at 1400–01, *United States v. Accetturo, 783 F.2d 382, 390–91 (3rd Cir.1986).

**5.** One manner of establishing such reliability is the use of an *in camera* examination. This

Act envisions similar authority for the judicial officer. *See Acevedo–Ramos,* 755 F.2d at 208; *Ridinger,* 623 F.Supp. at 1400–01.

 The showing of probable cause by means of the indictment alleging certain offenses may be enough to justify detention in some cases where the defendant fails to meet his burden of production rebutting the presumption of dangerousness. *See Hurtado,* 779 F.2d at 1478. In this case, defendant has presented evidence tending to rebut the presumption. Thus, it became incumbent upon the government to offer sufficient evidence to carry its burden of persuasion, a burden it must carry by clear and convincing evidence. The government failed to meet that burden. The government's evidence purportedly establishing defendant's propensity for continued criminal activity, that is, the evidence that defendant committed the crimes alleged in this indictment while out on bond, does not properly establish such propensity. And standing alone, the evidence that defendant has been charged with certain violations regarding those weapons does not constitute clear and convincing evidence of dangerousness.

Based upon the above-discussion, this court REMANDS this matter to the magistrate for further proceedings. Since this court has determined that defendant has rebutted the presumption of dangerousness originating in the indictment, this court directs the magistrate to hold further proceedings in which the government must present reliable evidence establishing, by clear and convincing evidence, that defendant poses a threat to the community. At such proceeding, the defendant may testify, present witnesses, cross-examine witnesses, and present evidence by proffer or otherwise. 18 U.S.C. § 3142(f). *See Hurtado,* 779 F.2d at 1479. Defendant has a conditional right, subject to the judicial officer's discretion, to call adverse witnesses. *See Gaviria,* 828 F.2d at 670.

 The court notes that while the judicial officer should conduct the detention hearing with the recognition that pretrial detention restricts for a significant time the liberty of a presumably innocent person, the judicial officer does have discretion to control the proceeding to prevent a pretrial hearing from becoming a full-blown trial. *Delker,* 757 F.2d at 1398; *Hurtado,* 779 F.2d at 1480.

Finally, the court instructs the magistrate that if, upon the conclusion of the hearing, the government has failed to produce sufficient evidence justifying pretrial detention, conditions should be set to reasonably assure the appearance of the defendant and to assure the safety both of any person and the community.

method should be used sparingly, however, and only when there exists a most compelling need and no alternative means of meeting that need.

*See United States v. Accetturo,* 783 F.2d 382, 391 (3rd Cir.1986); *Acevedo–Ramos,* 755 F.2d at 209.