USCA1 Opinion

 

 August 15, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 94-1535 UNITED STATES, Appellee, v. JUAN CARLOS ARROYO-REYES, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ___________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ___________________ Luis F. Abreu Elias on brief for appellant. ___________________ Guillermo Gil, United States Attorney, and Miguel A. ______________ __________ Pereira, Assistant U.S. Attorney, on brief for appellee. _______ __________________ __________________ Per Curiam. Defendant Juan Carlos Arroyo-Reyes appeals __________ from a district court order denying him bail. For the following reasons, we affirm. I. On March 9, 1994, a federal grand jury returned a five count indictment charging defendant with conspiracy to distribute at least fifty grams of cocaine base, five kilograms of cocaine, and one kilogram of heroin, see 21 ___ U.S.C. 841(a)(1), 846; continuing criminal enterprise, see ___ 21 U.S.C. 848(a)-(b); and using and carrying firearms in relation to a drug trafficking offense, see 18 U.S.C. ___ 924(c)(1). The indictment further charged, as overt acts, that defendant supervised sales of controlled substances; and that he and his co-conspirators used weapons to protect drug operations, to carry out carjackings, and to intimidate honest citizens who might report on their activities to law enforcement officials. Following defendant's arrest on these charges, a detention hearing was held before a magistrate judge. The magistrate decided to detain defendant without bail pending trial on grounds of risk-of-flight. A de novo hearing was subsequently held before the district judge on April 22, 1994. At the detention hearings, F.B.I. Special Agent Todd Polley testified for the government. Polley testified that based on information provided him by confidential sources and -2- the local police precinct, the defendant is the leader of an approximately twenty-six member gang which operates a drug point in Toa Baja, Puerto Rico, and which uses weapons to protect its members and its stashes of money from rival gangs. Polley and other FBI agents conducted surveillance of the alleged drug point and observed individuals carrying weapons, communicating by radio equipment, and conducting what appeared to be drug transactions. On one occasion, agents observed over one hundred transactions take place within a three hour period. A controlled buy confirmed that drugs were being sold. Agent Polley saw defendant at the drug point on a number of occasions, and observed that he appeared to be followed by body guards. Polley further testified that a search of defendant's home revealed over $14,000 cash, a money counter, ziplock bags similar to those used to package drugs, and radio transmission equipment similar to that used by the gang members to communicate with each other. Tape recordings of overheard radio communications, played at the hearings, included references by gang members to weapons, drugs and carjackings. On one of these tapes, gang members discussed freshly spray-painted threats designed to intimidate community members perceived to be "snitches" or "stool pigeons." Other evidence included a photograph which depicted defendant, roughly fifteen feet away from the drug -3- point, wearing a cellular phone on his hip pocket and accompanied by two individuals, one of whom was carrying a pistol. Another photograph depicted defendant transferring a packet from the drug point to a motor vehicle.1 Finally, the government proffered testimony that on September 6, 1993, defendant and another individual were arrested in Bayamon, Puerto Rico with $30,598 cash, two kilograms of cocaine, and two loaded weapons.2 As a result of this arrest, defendant faces charges in the Superior Court of Puerto Rico. The defendant is twenty years old and a life-long resident of Puerto Rico. At the time of his arrest, he was living with his grandfather. Defendant proffered witnesses who would testify, among other things, to his strong family and community ties; his positive employment history, including work as an electronic technician and a laborer in the construction industry; his religious upbringing; and his good reputation in the community. One witness, a former employer, would have testified that defendant was a "trusted employee," and that he was willing to employ defendant again and to provide employment records to the court. Another witness would have testified that defendant had studied electronics and had a part-time job in his home fixing ____________________ 1. The contents of the packet is unknown. 2. Defense counsel contested this proffered testimony, stating that defendant was merely a passenger in a motor vehicle in which drugs and weapons were found. -4- electronic equipment. Defendant's grandfather offered to post his home (worth $44,000) as bond, as well as to serve as a third-party custodian if defendant were released.3 The district court affirmed the magistrate judge's detention order on the grounds that defendant is both a risk of flight and a danger to the community. The court first observed that where, as here, a defendant has been indicted for a drug offense punishable by ten or more years under 21 U.S.C. 801 et seq., as well as a firearm offense under 18 U.S.C. 924(c)(1), a "rebuttable presumption" arises that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. See 18 U.S.C. 3142(e); United States v. Vargas, 804 F.2d ___ _____________ ______ 157, 163 (1st Cir. 1986) (per curiam) (indictment is sufficient to establish probable cause for purposes of triggering the rebuttable presumption in 3142(e)). The court then stated: Mindful of the fact that the presumption shifts to the defendant the burden of production, not the burden of persuasion, the defendant's proffer of evidence is not enough to grant him bail. This record contains strong indicia of defendant's involvement in a drugs and firearms conspiracy and criminal enterprise. The testimony of F.B.I. Special Agent Todd Polley, as well as the taped recordings and photo evidence, so confirm. The defendant operated what appears to be a large drug ____________________ 3. The transcript of the de novo bail hearing also indicates that defendant submitted to the court a letter signed by seventy-seven community members. This letter was not presented to us on appeal. -5- point backed up by a twenty-plus member organization under his direction. Large amounts of cash were seized. The presence of cash suggests that fleeing is easier to achieve. Money buys access to boats and private airplanes to a multitude of neighboring islands, from where further escape is quite easy. Furthermore, the obvious violent nature of the drug-related activities and the use of firearms and armed carjacking demonstrate that the safety of the community is compromised. The presumption remains that no condition or combination of conditions will reasonably assure appearance and the safety of the ___ community. II. In pretrial detention cases, we employ "independent review, tempered by a degree of deference to the determinations made below." United States v. Tortora, 922 _____________ _______ F.2d 880, 882 (1st Cir. 1990). As a practical matter, we defer greatly to the district court's factual findings. Id. ___ at 882-83. We also carefully scrutinize the district court's reasons, considering whether "due attention was given to all the statutory factors." United States v. O'Brien, 895 F.2d _____________ _______ 810, 816 (1st Cir. 1990). These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and seriousness of the danger posed by the accused's release. See 18 U.S.C. 3142(g). We give such deference to the ___ court's conclusions "as we think the care and consideration manifested by the . . . district court warrant." O'Brien, _______ 895 F.2d at 816. -6- Defendant attacks the reasoning of the district court. First, he contends that the district court impermissibly placed the burden on him to prove that pre-trial release was warranted. Second, defendant argues that the district court ignored some of the statutory factors relevant to release and improperly weighed those factors it did consider. In particular, defendant contends that the district court relied almost solely on the first factor, the nature of the offense, and failed to assess the weight of the evidence (which, he suggests, is weak), attached too little weight to his proffered evidence regarding the history and personal characteristics of the defendant, and failed to articulate any danger that defendant poses to the community. The government unquestionably bears the burden of proof at a pretrial detention hearing.4 Here, the government was aided by the presumption, set forth in 18 U.S.C. 3142(e), that no conditions would reasonably assure defendant's appearance and the safety of the community. The district court's order makes it plain that it was fully cognizant that this presumption merely shifts to the defendant the burden of production, not the burden of persuasion. See United States ___ _____________ v. Jessup, 757 F.2d 378, 381 (1st Cir. 1985). Contrary to ______ ____________________ 4. The government must demonstrate, by clear and convincing evidence, that the defendant's release poses a risk of danger to the community; or, by a preponderance of the evidence, that there is a risk of flight. See United States v. ___ ______________ Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). _________ -7- the defendant's suggestion, we do not interpret the court's statement that his "proffer of evidence is not enough to grant him bail" to mean that the district court lost sight of who had the burden of proof. Rather, read in context, this remark merely indicates that the court duly considered defendant's proffer but ultimately concluded that, even in light of it, there was sufficient evidence to detain him. We add that the presumption reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries, and that they present a special risk of pre-trial recidivism. See United States v. ___ _____________ Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per ________________ curiam); United States v. Williams, 753 F.2d 329, 335 (4th _____________ ________ Cir. 1985). Even when, as here, a defendant has introduced "some evidence" to rebut the presumption, the facts that gave rise to the presumption retain evidentiary weight depending upon how closely defendant's case resembles the highly lucrative drug operations at the center of congressional concern. See Palmer-Contreras, 835 F.2d at 18. Given the ___ ________________ size of the organization here, its apparent heavy volume of business, and the evidence of cash resources, the district court appropriately gave continuing weight to the presumption.5 ____________________ 5. Contrary to defendant's suggestion, we do not construe the district court's statement that the presumption "remains" to mean that it gave conclusive weight to it. -8- We also reject defendant's argument that the district court did not properly consider all of the relevant statutory factors. First, we note that defendant errs in stating that the district court failed to assess the weight of the evidence against him. To the contrary, the district court found that the record contains "strong indicia" of his involvement "in a drug and firearms conspiracy and criminal enterprise." We are similarly persuaded that the evidence linking him to these offenses is strong. Although defendant complains that some of the evidence against him is hearsay, the government may utilize reliable hearsay at a detention hearing. See United States v. Acevedo-Ramos, 755 F.2d 203, ___ _____________ _____________ 207 (1st Cir. 1985). Here, the second-hand reports that defendant is connected to, and indeed the leader of, a drug gang are corroborated by the observations of FBI agents, the photographs, the tape recordings, and the evidence seized from defendant's home. Second, with respect to defendant's personal history and characteristics, we observe, as did the district court, that he has had "prior brushes with the law." Most relevantly, at the time of the current offense, he was on release pending trial in state court for drug and firearm offenses. Congress has made it clear that an "especially significant" danger to the community is the risk that the drug network will continue to function while defendant awaits trial. See United States ___ _____________ -9- v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). Given ______ defendant's apparent behavior in this regard, as well as evidence of the violent nature of the drug-related activities and defendant's leadership role in the organization, the district court, aided by the statutory presumption of dangerousness, supportably found that he presented a risk to the safety of the community if released on bail. Cf. ___ Williams, 753 F.2d at 335 (suggesting that there was clear ________ and convincing evidence that defendants were a danger to the community where they had continued to be involved in drug trafficking despite prior narcotics convictions). Finally, although the question is closer, we are persuaded that pretrial detention is also justified on risk- of-flight grounds. On the one hand, defendant did proffer evidence of strong family and community ties, offer security, point to faithful appearances at prior court dates, and propose a custodial arrangement. On the other hand, he faces potentially severe penalties and apparently has access to large amounts of cash. Thus, there is ample reason to believe that he has the incentive and wherewithal to flee. Moreover, it is as to close issues like this that the deference we afford the district court's first hand determination in bail cases comes into play. Affirmed. _________ -10-