**UNITED STATES of America,**
**Appellant,**

v.

**Coltrane CHIMURENGA, a/k/a "Randolph Simms", a/k/a "Rashid Pendergrass", a/k/a "Lionel Jean-Baptiste", a/k/a "John Thomas", a/k/a "Macio McAdams", Defendant-Appellee.**

No. 1016, Docket 85–1049.

United States Court of Appeals,
Second Circuit.

Argued March 15, 1985.

Decided April 10, 1985.

Bart M. Schwartz, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Lorna G. Schofield, Kenneth Roth, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel), for appellant.

Irving Cohen, New York City (Stevens, Hinds & White, P.C., Lennox S. Hinds, Michele Chandler, Aaron Frishberg, New York City, of counsel), for defendant-appellee.

Haywood Burns, New York City, for amicus curiae Nat. Conference of Black Lawyers.

Barbara Dudley, New York City, for amicus curiae Nat. Lawyers Guild.

John C. Fields, New York City, for amicus curiae Nat. Conference of Black Lawyers, New York Chapter.

Jehnifer Garvey, New York City, for amicus curiae New York Chapter of the Nat. Lawyers Guild.

Arthur Kinoy, New York City, for amicus curiae Randolph Scott-McLaughlin Center for Constitutional Rights.

Phil Nash, New York City, for amicus curiae Asian American Legal Defense & Educ. Fund.

Before MESKILL and CARDAMONE, Circuit Judges, and TENNEY, District Judge.*

CARDAMONE, Circuit Judge:

This is an appeal from an order releasing on bail a person charged in a criminal conspiracy to commit armed robbery. It requires us to construe an important section of the Bail Reform Act, which is part of the Comprehensive Crime Control Act of 1984. Without reaching the constitutional issues presented by the Act,[1] we hold that the district court's conclusion that there were conditions of release that would reasonably assure the safety of the community and defendant's appearance at trial was not clearly erroneous.[2]

I

The government appeals pursuant to section 3145(c) of the Bail Reform Act of 1984 (Act), 18 U.S.C. § 3145(c), from an order issued orally on January 29, 1985 by the United States District Court for the Southern District of New York (Carter, J.) per-

---

\* Honorable Charles H. Tenney, United States District Judge for the Southern District of New York, sitting by designation.

1. Several groups have joined in an amicus curiae brief challenging the Act and its application to defendant on various constitutional grounds.

In light of the disposition of this case, it is unnecessary to reach those issues.

2. The Court filed a summary order of affirmance on March 19, 1985. In view of the importance of the issues raised, we believe an opinion is warranted.

mitting defendant Coltrane Chimurenga to be released on bail pending trial. At the time of that order, Chimurenga and seven co-defendants were charged in a one-count indictment with conspiracy to commit armed robbery. A superseding indictment filed in February 1985 charged Chimurenga and the other defendants with a violation of the Racketeer Influenced and Corrupt Organization Act, conspiracy to commit three armed robberies, conspiracy to commit three prison escapes, and various weapons and other offenses.

Defendants were arrested on October 18, 1984. The government moved upon their presentment before United States Magistrate Grubin for their detention without bail pending trial under section 3142(e) of the Bail Reform Act (effective October 12, 1984) on the grounds that defendants presented both an extreme danger to the community and a severe risk of flight. Magistrate Grubin held a two-week hearing pertaining to all eight defendants. The government alleged that Chimurenga was the leader of a successor group to a group of individuals known as the "Family." The "Family" was responsible for an armed robbery in Nanuet, New York, which resulted in the death of an armored truck guard and two police officers. The government's proof included: taped conversations in which Chimurenga instructed his co-defendants on how to kill armored truck guards, if necessary; tapes in which he advised others to cut emotional ties and flee rather than face imprisonment; an arsenal of weapons, ammunition, explosives, and bulletproof vests; physical surveillance evidence linking defendant to a series of planned violent crimes, including the planned prison escape of two members of the "Family"; and evidence of safehouses, false identification, and bank accounts under various aliases. Chimurenga presented only one witness.

In a thorough opinion Magistrate Grubin directed that the seven co-defendants be released under specified conditions, but ordered Chimurenga detained without bail, finding that he presented a risk of flight. The magistrate further found that the government had not met its burden of establishing by clear and convincing evidence that Chimurenga's release would pose an extreme danger to the community. She found it unlikely that he would engage in further violent activity in light of law enforcement agents' discovery of the group's plans. She explained that the "defendants are a highly intelligent, highly educated group of persons who, according to the government, took painstaking care in arduously calculating their goals over a lengthy period of time" and that "[t]hey have no criminal records whatsoever."

Although Chimurenga's response to her questions regarding his continued appearance in court "carried great weight in his favor," she found that he presented a risk of flight based on the "nature and seriousness of the charges against [him], the amount of time he spends away from his family, the evidence at this time against him, [and] the evidence of his philosophy of the necessity of becoming a fugitive in order to continue political struggle and of his alleged contacts with fugitives from other cases." She found no evidence that he was close to his family; she found that he was unemployed, and that his roots were primarily with his co-defendants. The magistrate added that should new evidence come to light, Chimurenga could apply for an amendment of her order.

A month later defendant appealed the detention order to the district court. Judge Carter heard additional evidence during a three-day hearing. Chimurenga submitted a memorandum that included details of his life, and a dozen or so letters from friends, relatives and associates indicating their belief that he would return to court to face the charges against him. Defendant has no criminal record and had been working on a doctorate at Harvard in public policy until his wife, a law graduate, took a job in New York City. Several witnesses testified. Two of them were Chimurenga's brothers from California, each of whom testified that Chimurenga had a strong sense of family. Judge Carter questioned the witnesses himself, probing the sincerity

and basis of their belief that Chimurenga would appear for trial. His two brothers offered to post a money bond in the amount of $500,000 as bail, secured by three residences with a claimed value of about $270,000. The district judge thereupon ordered Chimurenga's release pending trial, finding that he was "not convinced that Mr. Chimurenga is any danger of fleeing or any danger to the community." Chimurenga has remained in jail pending appraisal of the property and the recording of the necessary mortgages, both of which, we were advised at oral argument, are imminent. Chimurenga's co-defendants have met their bond requirements and restrictions, including strict curfews and reporting obligations.

## II

Section 3142 of the new Bail Reform Act dramatically changes prior law by including "the nature and seriousness of the danger to the community that would be posed by the person's release" as a factor to be considered in determining conditions of pretrial release, and by authorizing detention pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e), (g)(4). The change in the law reflects "the deep public concern ... about the growing problem of crimes committed by persons on release" and the recognition that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 U.S.Code Cong. & Ad.News, P.L. 98–473, at 3188–3189. (Senate Report). Congress has determined that "[w]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* at 3189.

Under section 3142(f) of the new statute pretrial detention is limited to certain types of cases. A motion seeking such detention is permitted when the charge is for (1) "a crime of violence," (2) "an offense for which the maximum sentence is life imprisonment or death," (3) an offense involving controlled substances carrying a ten-year sentence, or (4) any felony committed by certain previously convicted persons. 18 U.S.C. § 3142(f)(1). Regardless of the nature of the offense charged, a motion seeking pretrial detention is also authorized when there is a serious risk that defendant will flee or obstruct or attempt to obstruct justice. *Id.* § 3142(f)(2). Before detention may be ordered, a hearing must be held to determine whether any condition or combination of conditions of release will protect the safety of the community and reasonably assure defendant's appearance. The government has the burden of establishing defendant's dangerousness by "clear and convincing evidence." *Id.* § 3142(f). Factors to be considered in determining whether detention is appropriate are enumerated in the statute and include the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community. *Id.* § 3142(g).

## III

We first consider whether defendant was indicted for a crime of violence under § 3142(f)(1)(A). The government moved under § 3142 for defendant's detention on the grounds that the conspiracy to commit armed robbery was a "crime of violence." Defendant argues that conspiracy, an inchoate crime, does not fall within the statutory definition of that phrase. In the task of interpretation of a statute, a court must be disinterested so that it may fairly ascertain Congressional purpose and policy, and must avoid treating the words used in the statute as "empty vessels" into which meaning can be poured. Frankfurter, *Some Reflections on the Readings of Statutes*, 2 Rec.A.B.City N.Y. 213, 215 (1947). A "crime of violence" is defined in

the Act as "(A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4); *see also* 18 U.S.C. § 16 (containing virtually identical language). Relevant legislative history gives burglary as an example of the second prong, a felony that *"by its nature"* involves such a substantial risk. Senate Report, *supra,* at 307 (emphasis added). In the course of committing a burglary, there is, of course, the violence against the property and the additional risk that one who may surprise the burglar will be harmed.

■ Conspiracy is defined as an agreement by two or more persons to commit any offense against the United States and an overt act to effect the object of the conspiracy. 18 U.S.C. § 371. In this case defendant was charged with conspiracy to commit armed robbery in violation of 18 U.S.C. § 1951(a). The character and effect of a conspiracy—including the one charged here—is not to be judged in the abstract by viewing its separate parts, but must be looked at as a whole. *See United States v. Patten,* 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333 (1913). Thus viewed, conspiracy to commit armed robbery falls within the ambit of § 3156(a)(4)(B), *supra.* The existence of a criminal grouping increases the chances that the planned crime will be committed beyond that of a mere possibili-

ty. Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes instead a significant *probability. See United States v. Greer,* 467 F.2d 1064, 1071 (7th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973). Thus, ascribing an ordinary meaning to the words, a conspiracy to commit an act of violence is an act involving a "substantial risk" of violence. *See* S.Rep. No. 307, 97th Cong., 1st Sess. 24–26 (1981); *see also* Senate Report, *supra,* at 20–21; S.Rep. No. 147, 98th Cong., 1st Sess. 47 (citing to D.C.Code provisions regarding, inter alia, the term "crime of violence" which is defined therein to include conspiracy to commit certain violent crimes). Moreover, it was not the aim of Congress to enable a person charged with conspiracy to commit a crime of violence to avoid the strictures of the statute, simply because his arrest prevents the bringing about of the conspiracy's objectives. We therefore conclude that a conspiracy to commit armed robbery is a "crime of violence" within the meaning of this statute.

### IV

■ Finding that defendant was charged with a crime of violence under § 3142(f)(1)(A), we consider whether a rebuttable presumption arises under § 3142(e) "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." [3] The government urges that

---

**3.** Section 3142(e) reads:

DETENTION.—If, after a hearing, pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial. In a case described in (f)(1), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

(1) the person has been convicted of a Federal offense that is described in subsection

(f)(1), or of a State or local offense that would have been an offense described in subsection (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

(2) the offense described in paragraph (1) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later.

*Subject to rebuttal by the person, it shall be presumed that no condition or combination of*

the presumption applies because there was probable cause at the time of the detention hearings to believe that Chimurenga had violated section 924(c) by using or carrying a firearm during, and in relation to, a federal crime of violence. 18 U.S.C. § 924(c). We agree with Magistrate Grubin that the rebuttable presumption did not apply because the government had not yet charged defendant with the offense.

The plain language of the statute and the legislative history shows that the presumption was intended to arise only after a defendant has been charged with the particular offense by a valid complaint or indictment. Section 3142(a)(4) states that "[u]pon the appearance before a judicial officer of a person *charged* with an offense, the judicial officer shall issue an order that, pending trial, the person be ... detained pursuant to the provisions of subsection (e)." (emphasis added). *See also* Senate Report, *supra*, at 18 & n. 57. As the magistrate observed, it may not be until defense counsel is standing with defendant at presentment that the government discloses that a firearm was found on defendant. At that point defense counsel cannot be expected to rebut a presumption the government will seek to invoke then and there. To hold that the rebuttable presumption comes into play prior to a formal charge would rip the fabric of the statute's carefully sewn procedural safeguards. *See United States v. Payden,* 759 F.2d 202, 205 (2d Cir.1985).

## V

■ We turn finally to consider whether in light of defendant's evidence, it was clearly erroneous for the district judge to determine that he did not present a danger to the community or a risk of flight. *See United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985) (holding that the clearly

erroneous standard applies to findings of fact following detention hearings). In our view the district court's determination— that the government failed to demonstrate by clear and convincing evidence that Chimurenga was a danger to the community— was not clearly erroneous. As a preliminary matter, it was correct to place the burden of persuasion on the government. This would be proper even were the rebuttable presumption to apply. *See United States v. Jessup,* 757 F.2d 378, 381–84 (1st Cir.1985). Thus, in either event the government continued to have the burden to prove by clear and convincing evidence that Chimurenga was dangerous. *See* Senate Report, *supra,* at 22. The "clear and convincing evidence" with respect to a defendant's danger to the community required by § 3142(f)(2)(B) means something more than "preponderance of the evidence," and something less than "beyond a reasonable doubt." *See Addington v. Texas,* 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979). To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty. Regardless of how an appellate court might decide such a question in the first instance, a determination by the district court that the government has not met its high burden must withstand review unless it can be said to be clearly erroneous.

■ Nor was it clearly erroneous for the district judge to conclude that there were conditions of release—such as a half-million dollar bond—that would reasonably assure defendant's presence at trial. The government's burden of proof on the question of risk of flight is not by clear and convincing evidence, but rather by a preponderance of the evidence. The quantum of proof needed to demonstrate risk of flight remains unchanged by the Act, and

---

*conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense* for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Sub-

stances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or *an offense under section 924(c) of title 18 of the United States Code.*

18 U.S.C. § 3142(e) (emphasis added).

its legislative history does not suggest that any change was contemplated. Proof by a preponderance of the evidence is the standard usually used in pretrial proceedings. *See United States v. Matlock*, 415 U.S. 164, 177–78 & n. 14, 94 S.Ct. 988, 996–97 & n. 14, 39 L.Ed.2d 242 (1974) (voluntariness of consent search); *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972) (voluntariness of confession).

The government urges us to follow the lead of the Fourth Circuit in *Williams*, which reversed as clearly erroneous a district court's holding that permitted a defendant to be released following a magistrate's detention order. The *Williams* court was, as we are here, "plagued by the absence of detailed factual findings by the district court." 753 F.2d at 333. This situation has arisen and will continue to arise because the Act requires the court to make factual findings only in the event of a detention order, 18 U.S.C. § 3142(i), and not when there is a release order, *id* § 3142(h). Although the *Williams* court accepted the "legal proposition that the district judge, being an Article III judge while the magistrate is not should, as between the two, be accorded greater deference," 753 F.2d at 333 n. 12 (citation omitted), it nonetheless found the district court's order clearly erroneous. *Id.* at 336.

 In that case, unlike the one before us, defendants produced no evidence to rebut the government's case, 753 F.2d at 334, defendants had previous felony convictions for drug trafficking and, in fact, one of them had been on parole from a previous conviction at the time of the later alleged offense. Further, the *Williams* court found that the district court, acting contrary to legislative intent, had disregarded evidence of defendants' ongoing involvement in the sale of drugs because the district judge did not believe that such involvement could constitute a risk to the safety of the community. *Id.* at 335. In this case, the district judge considered all of the evidence presented and, particularly in light of the importance we attach to that judge's assessment of the witnesses' credibility, we are loath to overrule his experienced judgment.

Accordingly, the order is affirmed.