UNITED STATES of America, Appellee,

v.

John PATINO, Defendant–Appellant.

No. 1319, Docket 91–1646.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1992.

Decided May 6, 1992.

Alan Drezin, Brooklyn, N.Y., for defendant-appellant.

Jodi Levine Avergun, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before: FEINBERG, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

John Patino was convicted, after a jury trial in the Eastern District of New York before Judge Anna Diggs Taylor,[1] of conspiracy to kidnap in violation of 18 U.S.C. § 1201(c) (1988), and of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) (1988). He was sentenced to 151 months imprisonment on the conspiracy charge, to be followed by a mandatory consecutive five-year term of imprisonment on the firearms charge, to be followed by two three-year terms of supervised release to run concurrently. On appeal he challenges only his conviction on the Section 924(c)(1) firearms charge and his sentence. We affirm.

Patino was tried on a superseding indictment charging him and six others with conspiracy to kidnap and kidnapping. Count One charged all defendants with conspiracy to kidnap in violation of 18 U.S.C. § 1201(c). Count Two charged all defendants with the substantive charge of kidnapping in violation of 18 U.S.C. § 1201(a). Count Six charged Patino and his wife Eldery Osorio with the use of a gun on or about November 4, 1990, in violation of 18 U.S.C. § 924(c)(1), during and in relation to the kidnapping and conspiracy crimes. All defendants except Patino pled guilty. Patino was convicted on Counts One and Six and acquitted on Count Two.

The evidence at trial showed that on November 4, 1990, George Medina was kidnapped by Patino, Osorio, Andres Rivera Lopez, Jorge Fuentes, and three others. The kidnapping occurred because George Medina's brother, Jose Medina, owed Osorio drug money, and the kidnappers intended to hold George as security for Jose's debt.

---

1. Judge Taylor is from the Eastern District of Michigan and was sitting by designation.

The kidnapping occurred while George was finishing a phone call at a pay telephone in Philadelphia. Patino, whom George knew through his brother Jose, approached George and asked him to contact his brother. At that time one of the two men accompanying Patino grabbed George and said he would have to go with him. This man, who has not been identified, deliberately made the outline and handle of a gun visible through his shirt. After several vain attempts to reach his brother, George Medina found himself surrounded by three other individuals at the pay telephone. Osorio told George that he would have to go to her hotel room in Cherry Hill, New Jersey, and continue to try to contact his brother from there. George went along because he was frightened and felt he had no choice.

George Medina got into a van with Patino, Osorio, and the man with the gun. Instead of New Jersey, he was driven to an apartment in Queens, New York. Shortly after his arrival, Lopez and Fuentes blindfolded George and drove him to a new location, a house in Queens. Once at the house, George Medina was again asked to try to contact his brother. Lopez and George both testified that Patino was present when George finally reached his brother by telephone. Jose was told by Osorio to pay $400,000, because although she was with George and he was safe for the moment, if Jose did not pay by the next day, George "was out of her hands and she [didn't] know what was going to happen to him."

Handcuffed to a chair, George was held in the basement of the house in Queens from Sunday night, November 4, 1990 to the following Saturday. He was guarded by a number of individuals and threatened at gunpoint by Lopez and two others. On the second day of the kidnapping, Lopez and Fuentes returned to the apartment in Queens, leaving George at the house. At the apartment, Osorio gave Lopez and Fuentes three guns, alluding to the fact that they were needed for protection because money was to be picked up from Jose. Patino was present when Osorio handed the guns to the men.

George was rescued by police on November 11, 1990 at a restaurant designated as the meeting place at which Jose Medina was to exchange thirteen kilograms of cocaine for the release of his brother. The police arrested Lopez and Fuentes, who were armed. The third gun was recovered at the Queens house where George Medina had been held.

■ Patino's first challenge to his Section 924(c)(1) firearms conviction—that there was insufficient proof that a firearm was actually used during George Medina's kidnapping—merits scant attention. George Medina gave an eyewitness account of what he saw—"He pushed my arm away and he told me not to act stupid, and he showed me that he had a gun through his shirt. . . . He let the handle stick out and I could see the form of it through his shirt." This evidence was more than sufficient because, contrary to appellant's argument, the government was not obliged to produce an actual firearm as evidence at trial. *See United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986); *see also United States v. Gregg,* 803 F.2d 568, 571 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987).

Patino also claims that the government impermissibly constructively amended the indictment during rebuttal summation, when it argued that the weapons mentioned in the firearms count included not only the gun George Medina saw when abducted on November 4, 1990, but also the three additional guns distributed by Osorio and recovered after the arrests on November 11, 1990. Patino argues that Count Six of the indictment charged him with using a gun only at the time of George Medina's abduction, and, therefore, the prosecutor impermissibly expanded the indictment in referring to the three additional weapons.

■ An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment. *United States v. Miller,* 471 U.S. 130, 144–45, 105 S.Ct. 1811, 1819–20, 85 L.Ed.2d 99 (1985). Constructive amendment of an indictment is a *per se*

violation of the grand jury clause of the Fifth Amendment. *United States v. Zingaro*, 858 F.2d 94, 98 (2d Cir.1988).

However, an impermissible alteration of the charge must affect an essential element of the offense, *United States v. Weiss*, 752 F.2d 777, 787 (2d Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985), and we have "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial." *United States v. Heimann*, 705 F.2d 662, 666 (2d Cir.1983) (citing *United States v. Sindona*, 636 F.2d 792, 797–98 (2d Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981)). In analogous circumstances, courts have allowed variations between the indictment and the evidence. For example, courts have rejected claims that the type of firearm alleged in the indictment is an essential element under Section 924(c)(1) and have affirmed convictions where the evidence showed a different type of weapon. *See, e.g., United States v. Robison*, 904 F.2d 365, 369 (6th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990) (conviction affirmed where indictment charged use of a .357 Magnum but proof showed use of shotgun). In addition, in *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), we held that when "on or about" language is used in an indictment, the government is not required to prove the exact date stated, so long as a date reasonably close in time is proved and the specific time of the offense is not an essential element of the offense charged.

■ Based on this caselaw, we conclude that the prosecutor's summation reference to the three additional guns did not amount to a constructive amendment of the indictment. Count Six of the indictment simply stated that "On or about November 4, 1990, within the Eastern District of New York, the defendants John Patino and Eldery Osorio ... did use and carry a firearm." The summation reference to the three additional guns did not materially alter this general charge. Patino clearly had sufficient notice of the core criminal conduct for which he was charged—the conspiracy to kidnap and the use of a firearm around the date of the abduction and in connection with that conspiracy. *See Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (indictment written in general terms may support conviction on alternative bases).

What occurred in the instant matter was at best a variance rather than a constructive amendment of the indictment. A variance, unlike a constructive amendment, does not broaden the possible basis for conviction beyond that contained in the indictment. *See Miller*, 471 U.S. at 145, 105 S.Ct. at 1819. In the instant case, the difference between the conduct charged in Count Six of the indictment and the proof offered at trial—alleged use of a gun on or about November 4, proof of use of a gun on that date and a distribution of weapons by Osorio one or two days later—was immaterial because the allegations and the proof "substantially correspond." *See Heimann*, 705 F.2d at 669. Moreover, even assuming a variance, there was no conceivable prejudice. *See Weiss*, 752 F.2d at 787. Indeed, when Lopez testified about Osorio's distribution of the guns, Patino did not object on grounds of surprise or of constructive amendment.

*United States v. Zingaro*, 858 F.2d 94 (2d Cir.1988), on which appellant heavily relies, is easily distinguishable. *Zingaro* involved, *inter alia*, a series of unlawful debt collections as predicate acts under the Racketeer Influenced and Corrupt Organizations Act, in violation of 18 U.S.C. § 1962(d) (1982). The indictment included the names of a number of individuals from whom the co-conspirators had unlawfully collected debts. The heading for this portion of the indictment read: "Unlawful Debt Collection in Yonkers Social Clubs." *Id.* at 101 n. 7. However, the government in summation stated that Zingaro had unlawfully collected another debt from an individual not mentioned in the indictment. We held that this amounted to a constructive amendment of the indictment because the defendant had "no inkling" that he was

charged with this extortion, which was neither mentioned in the indictment nor related to the activities of the social clubs. *Id.* at 103.

■ Patino also argues that his Section 924(c)(1) conviction was improper because conspiracy to kidnap, the only crime for which he was convicted, does not qualify as a "crime of violence" under that section. We disagree.

Section 924(c)(1) mandates an additional five-year prison sentence for anyone who uses or carries a firearm "during and in relation to any crime of violence or drug trafficking crime." Under Section 924(c)(3), a crime of violence is a felony that—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). That the crime of kidnapping involves the threatened use of physical force against a person and is thus a crime of violence under this statute cannot be questioned. The only issue, therefore, is whether conspiracy to commit kidnapping also qualifies as a crime of violence under Section 924(c)(1).

Although we have not addressed this percise question, the reasoning of *United States v. Chimurenga,* 760 F.2d 400 (2d Cir.1985), is dispositive. In *Chimurenga,* we held that conspiracy to commit armed robbery constituted a crime of violence in determining whether a defendant should be detained pending trial for the purposes of Section 3142 of the Bail Reform Act. *Id.* at 404 (interpreting 18 U.S.C. § 3142(f)). *Chimurenga* is directly analogous, because the definition of "crime of violence" in the Bail Reform Act, 18 U.S.C. § 3156(a)(4), is virtually identical to that in Section 924(c)(3).

■ *Chimurenga* rejected the argument that conspiracy, an inchoate crime, cannot be considered a crime of violence. "The character and effect of a conspiracy … is not to be judged in the abstract by viewing its separate parts, but must be looked at as a whole." *Id.* at 404. A conspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals. Such a meeting of the minds enhances the likelihood that the planned crime will be carried out. *See Chimurenga,* 760 F.2d at 404. Thus, when a conspiracy exists to commit a crime of violence, such as kidnapping, the conspiracy itself poses a "substantial risk" of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

■ Patino's final claim is that his sentence was improper because the district court used the specific offense characteristics for kidnapping as set out in Guidelines' Section 2A4.1. The argument is meritless. Patino was convicted of conspiracy to kidnap and acquitted of the substantive crime of kidnapping. The Guidelines' provision applicable to inchoate offenses, Section 2X1.1, states in pertinent part that the base offense level is:

> [t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

U.S.S.G. § 2X1.1(a). Guidelines' Section 2A4.1 lists the base offense level for kidnapping at 24. Further enhancements were applied to Patino because a ransom demand was made (6 levels) and because the kidnapping was done in the furtherance of another crime (4 levels). *See* U.S.S.G. §§ 2A4.1(b)(2), 2A4.1(b)(7).[2] The total base offense level of 34 yielded a sentence range under the Guidelines of 151–188 months.

Patino argues that because he was acquitted of the substantive crime of kidnapping, the jury must have accepted his con-

---

**2.** The district court correctly applied the pre-November 1, 1991 version of the Sentencing Guidelines.

tention that he had withdrawn from the conspiracy before the ransom demand or facilitation of another crime. If that argument were correct, Patino would have been entitled to a three-level decrease in his base offense level through the application of Section 2X1.1(b). In pertinent part, that section states that:

(2) If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

However, Patino's argument fails because his acquittal is simply not dispositive under the Guidelines. *See United States v. Rodriguez-Gonzalez*, 899 F.2d 177, 180–82 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). Under Section 1B1.3 of the Guidelines, Judge Taylor had to determine Patino's base offense level by taking into account "all acts committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable." The latter conduct includes "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1).

Patino's quarrel is thus with Judge Taylor's factual findings regarding the use of firearms, the ransom demand, and the facilitation of a drug offense. We of course must accept these findings unless they are "clearly erroneous." *United States v. Lanese*, 890 F.2d 1284, 1291 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). In the instant case, the evidence produced at trial, including the testimony of Patino's co-conspirators, amply supported the district court's findings regarding Patino's connection with the substantive kidnapping crime, including the abduction of George Medina at gun-

point, the ransom demands of the kidnappers, and the underlying drug deal.

We therefore affirm.