# UNITED STATES of America

v.

## John Timothy MAJORS.

### No. 1:95–CR–174–2.

United States District Court,
E.D. Texas,
Beaumont Division.

June 17, 1996.

James A. DeLee, Port Arthur, TX, for John Timothy Majors.

Joseph Robert Batte, U.S. Attorney, Beaumont, TX, for U.S.

### MEMORANDUM RE: DEFENDANT'S MAY 24, 1996 "MOTION FOR RE-LEASE [FROM] DETENTION PEND-ING SENTENCING"

HINES, United States Magistrate Judge.

Pending is defendant's May 24, 1996 "Motion for Release [from] Detention Pending Sentencing." This motion was referred to the undersigned United States Magistrate Judge by United States District Judge Thad Heartfield for determination by order dated May 31, 1996.

### I. Legal and Factual Background

Following a jury trial before Judge Heartfield, defendant was convicted on May 22, 1996 of conspiracy to possess marijuana with intent to distribute and actual possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(b)(1)(D), 846. Each of these counts contains a maximum prison term of five years.

On May 24, 1996, the defendant moved for release from custody pending sentencing pursuant to 18 U.S.C. § 3143(a)(1). Section 3143 requires in most cases detention after a defendant has been convicted. Said one court,

> The legislative history [of the Bail Reform Act of 1984] includes two important findings upon which 18 U.S.C. § 3143 was based:
>
> 1. Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal. The conviction ... is presumably correct in law.

2. (R)elease of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law, especially in those situations where an appeal of the conviction may drag on for many months or even years.

*United States v. Ross,* 730 F.Supp. 355, 356 (D.Kan.1990); S.REP.NO. 225, 98th Cong., 1st Sess. 26 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3209.

Nevertheless, § 3143(a)(1) does provide for post-conviction release if defendant makes a sufficient showing to the court concerning the likelihood of flight and danger to any person or to the community. The section provides, in pertinent part: "[T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1).

■ In the context of the Bail Reform Act of 1984, "clear and convincing evidence" has been described as "something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985). For a conclusion to be supported by clear and convincing evidence, it must be supported by the evidence to a high degree of certainty. *Id.*

■ Among factors the district court should consider in determining whether to grant a convicted defendant's motion for release pending sentencing are those factors enumerated in 18 U.S.C. § 3142(g) governing pretrial release. *See United States v. Vance,* 851 F.2d 166, 169–70 (6th Cir.1988). An evidentiary hearing was convened on June 11, 1996 to receive evidence concerning the various factors.

## II. Evidence

At the outset of the evidentiary hearing, the court admitted into evidence the Pretrial Services Report prepared by the United States Probation Officer on November 21, 1995 at the outset of this matter. The defendant presented evidence through six witnesses, and the government offered evidence by way of proffer.

### A. Defendant's Witnesses

Defendant presented the testimony of his wife, mother, mother-in-law, and two sisters at the hearing. Defendant also testified himself at the hearing. Each of the five relatives appearing testified to her belief that defendant would neither flee nor pose a danger to any individual or to the community if released. All of the witnesses reside in the greater Houston, Texas area, the region where defendant has resided virtually his entire life. The witnesses promised to act within their means, if requested, to assemble collateral to secure defendant's promise of appearance for future court proceedings.

Defendant's wife, Kathy Majors, was the third party custodian during pretrial release. She testified that defendant has throughout the proceedings complied with conditions of release. She stated that it was her belief that defendant would not flee for the simple reason that he would have nowhere to go; his home and all of his family members are in and around Houston, Texas.

Dorothy Hicks, defendant's mother-in-law, testified that her daughter and defendant have been residing with her for several years without incident and that defendant is a respectful individual.

Both of defendant's sisters who appeared testified that they would be willing to assist Ms. Majors in defendant's third party supervision. One sister, Robbie Outlaw, testified as to her belief that defendant would not commit crimes while on release because he had been "scared into reality." It was also her opinion that defendant was disinclined to take any action which further upset or embarrass the family.

Finally, defendant testified that, while disappointed, he has accepted the jury's verdict and has no intention of fleeing. He stated that it is his hope that he will be released on 6 p.m.–6 a.m. house arrest so that he may work to support his family up until the time of his incarceration.

## B. Government's Proffer

The Assistant United States Attorney handling this matter offered by way of proffer evidence that while on pretrial release the defendant placed a telephone call to a party named as a government witness. The government also proffered that during the trial in this matter a number of jurors commented that defendant Majors and co-defendant William Bruce Hare were staring at the jury in an attempt to intimidate them.

The Assistant United States Attorney also offered by way of proffer evidence that Majors was not a leader of the drug conspiracy charged in the indictment. Rather, Hare, a co-defendant, appeared to be the leader. A second co-defendant, Tamorra Pinkston, the spouse of defendant Hare, acted in an "administrative capacity" in the venture by maintaining records of distribution and other financial records. Defendant Hare recruited Majors to drive approximately fifty pounds of marijuana to its destination. The marijuana was uncovered during a routine traffic stop along Interstate Highway 10 in Orange County, Texas. There is no suggestion that Majors was the principal player in the venture, or that he acted in any capacity other than as a courier. Nor, according to the proffer, was there any suggestion in the evidence at trial that Majors made use of firearms in his capacity.

According to the proffer, preliminary guideline calculations place defendant's total likely sentence of imprisonment somewhere between 21 months and five years.

## C. Evidence Contained in the Pretrial Services Report as to the Other Factors

### 1. Family and Community Ties and Employment

Defendant, age 34, was born in Denver, Colorado. His father is deceased, and his mother lives approximately forty-five minutes from Houston, Texas. Defendant has lived in the Houston area since he was eight years old, with the exception of a brief period in the early 1980s, when he lived in another part of the state. Defendant's six siblings all reside in the Houston area.

Defendant was married in 1995. He and his wife have lived together in Houston since 1983. Defendant has two step-children, who live with him as well.

If released, defendant states he would seek employment. His most recent period of employment was for eight months in 1994 with Austin Industries. Prior to that, he was a self-employed contractor.

### 2. Criminal History

Defendant was convicted in July 1982 on a charge of rape in Montgomery County, Texas. He was sentenced to 90 days prison, with ten years of shock probation to follow. This sentence has been discharged. The only other arrest of record is a September 1982 arrest for felony theft in Milam County, Texas. This charge was dismissed.

### 3. Physical and Mental Condition and History Relating to Drug or Alcohol Abuse

Defendant is in good physical health and has never been treated for any mental illness. He reported to the Pretrial Services Officer in November 1995 that he has smoked marijuana since age 13. He also acknowledged use of cocaine, but reported at that time at least a year had likely passed since he had last used that drug.

## III. Analysis

### A. Flight

■ Defendant has met his burden under 18 U.S.C. § 3143(a)(1) of demonstrating by clear and convincing evidence that he is not likely to flee. He has presented testimony regarding his long-standing residential and family ties to the Houston area. He and other witnesses testified regarding his com-

pliance with conditions of release in this matter to date. He has previously successfully discharged a sentence containing a term of shock probation. Finally, defendant has presented the testimony of numerous relatives who are willing to assist in his pre-sentence supervision and who have offered to put up collateral. *See Redeaux v. United States*, 806 F.Supp. 626, 627 (E.D.Tex.1992) (in § 3143(b) inquiry, testimony that defendant has established roots in the community and that her home and family are present in the community "may" suffice to carry burden on flight issue, and stating several sentences later that defendant "is not likely to flee ... if released"); *United States v. Dempsey*, No. 91–098, 1991 WL 255382, at *1 (E.D.La. Nov. 19, 1991) (finding as part of § 3143(a)(1) analysis, which is required component of release pursuant to § 3145(c), that defendant's residence in community for twelve years, the presence of his wife and two children in the community, and that fact that he had made all required court appearances while on pretrial release sufficient to establish that defendant posed no risk of flight); *United States v. Ross*, 730 F.Supp. 355, 357 (D.Kan. 1990) ("Defendant has appeared at all hearings and he had other witnesses believe that he will continue to so appear. His consistent appearance may support a finding that defendant may not flee."; motion for post-conviction release nevertheless denied because defendant failed to make required showing on dangerousness prong).[1]

## B. Danger

■ Similarly, the defendant has met his clear and convincing evidence burden on the question of whether he poses a danger to the safety of any other person or to the community. Defendant introduced the testimony of numerous close relatives who each stated her earnest belief that defendant is a person of good character and would not pose a danger to the community or to any person.[2]

Moreover, other than the present offense, defendant has never been arrested or convicted for a drug-related offense. *See Dempsey*, 1991 WL 255382 (defendant's burden of proof on dangerousness met by evidence that

1. There exist certain cases in which similar evidence has been found insufficient to meet defendant's clear and convincing evidence burden. However, these cases are distinguishable. In *United States v. Bryant*, 873 F.Supp. 660 (N.D.Ga.1994), defendant sought release pursuant to § 3142(a)(2) after conviction of a crime for which the maximum possible period of incarceration exceeded ten years. Defendant introduced testimony of several witnesses, who stated their belief that defendant would willingly return to court for sentencing, that they would put up real property assets as bond for his release, and that they would provide moral support for his return on the scheduled sentencing date. Another witness testified that he would employ defendant if he were released. Relying principally on the potential length of sentence, the court found that defendant did not meet his clear and convincing evidence burden with respect to flight. Because the potential sentence in this case is decidedly distinct from that in *Bryant*, the undersigned finds the *Bryant* court's reasoning on the flight issue unpersuasive under these facts.

   In *United States v. DiMauro*, 614 F.Supp. 461 (D.Me.1985), defendant was convicted of the offense of aiding and abetting the offense of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant was sentenced to a period of incarceration of five years and a probation term of three years, and he moved for release pending appeal pursuant to § 3143(b). In the course of its analysis, the

court found that defendant had not demonstrated by clear and convincing evidence that he would not flee or pose a danger. The court focused primarily on the danger issue. The court received the following evidence on the flight issue: that defendant had never failed to appear in court when requested; that he had lived in the local area from childhood, that he continued to live there with his wife and child, and that several family members lived nearby; that his parents offered to place liens on their real property, to secure his release pending appeal; that he had previously satisfied a two-year term of probation; and that he had employment available to him if released. Nevertheless, the court found this specific evidence insufficient in light of the general maxim that a defendant has more incentive to appear prior to trial, when he or she carries some belief of prevailing at trial, then he or she does after conviction. Because this analysis of the evidence, while cogent, is at odds with the above-cited precedents in this circuit, the *DiMauro* court's treatment of the flight issue will not be adopted here.

2. The court notes that non-physical as well as physical danger constitutes danger to the community which can justify detention under the Bail Reform Act of 1984. *United States v. Fortna*, 769 F.2d 243 (5th Cir.1985). The very nature of drug offenses themselves constitutes a non-physical danger to the community. *United States v. Cox*, 635 F.Supp. 1047 (D.Kan.1986).

the drug felony at issue was his first, that he remained drug free, and that he was receiving psychological counseling). Defendant's only reported criminal history consists of a 1982 non-drug conviction and a 1982 non-drug arrest for which the charges were dismissed. Moreover, according to the candid proffer of the Assistant United States Attorney, there is no suggestion that defendant was a leader or major player in the events which gave rise to the instant conviction. In short, there is no evidence to suggest that defendant will continue to be involved in the distribution of illegal drugs or would otherwise pose a danger to any person or to the community.

This set of facts renders this case distinguishable from the typical drug-related case in which a court denies post-conviction release. In *United States v. Bryant*, 873 F.Supp. 660 (N.D.Ga.1994), a case involving a mandatory ten-year minimum period of incarceration, the court, notwithstanding testimony of defendant's good character and non-violent nature, found that the defendant's evidence did not satisfy the clear and convincing evidence threshold. Significant to the court were the fact that the defendant faced a ten-year minimum mandatory sentence, that the defendant had numerous prior arrests for selling illegal drugs, and that when arrested the defendant possessed over 300 grams of crack cocaine. In *United States v. DiMauro*, 614 F.Supp. 461 (D.Me. 1985), the court found that defendant failed to carry his clear and convincing evidence burden of proof to secure release, despite a record containing no prior felony convictions; significant to the court was the active role defendant played in what the court suggested was likely "a continuing series of drug transactions." The defendant in *DiMauro* was responsible for transporting drugs, as was defendant in this case. However, the defendant in *DiMauro* had additional responsibilities which were indicative of his significant involvement in ongoing trade of narcotics, including responsibility for dividing cocaine and weighing it, and keeping clients informed as to future supplies of cocaine and the quality that could be expected in these shipments. Finally, in *Ross*, the court again focused on the business-like nature of the

operation. Cocaine was found with defendant and in his house. He carried a beeper while at work, and would leave work upon call to make deliveries. Guns were found in his home and his car. "Evidence of defendant's drug business, the weapons, his mode of operation, and a complete failure of evidence to remotely reflect that he will not be engaged in the same business does not show by clear and convincing evidence that he would not be a danger to the safety of the community if released pending sentence." *Ross*, 730 F.Supp. at 357.

These cases demonstrate that the severity of the underlying offense, the presence or absence of prior drug-related convictions, and the presence of evidence that defendant was engaged in a "business-like" operation are highly significant in the danger inquiry. The defendant in the instant case does not share the prominent characteristics of the defendants in *Bryant*, *DiMauro*, and *Ross*. Most notably, there is no indication that defendant utilized sophisticated business techniques in an ongoing drug venture. Rather, it appears defendant served on the occasion in question at the lowest level of operation— as a courier (or, in the vernacular, a "mule").

The court finds the defendant's evidence concerning danger sufficient, under the particular facts of this case, to satisfy the evidentiary burden imposed by § 3143 to secure release pending sentencing.

## IV. Conclusion

The court concludes that there exist conditions of release which will reasonably assure both the presence of defendant at sentencing and the safety of the community. Specifically, the court concludes that the pre-existing conditions of pretrial release, when amended to require additional financial security and additional supervision, are sufficient to assure the court as to both presence and safety. For these reasons, the defendant's motion for release from detention pending sentencing will be granted. An order setting conditions of post-conviction release will be entered simultaneously.