**UNITED STATES of America,**

v.

**Marc DREIER, Defendant.**

**No. 09 Cr. 085(JSR).**

United States District Court, S.D. New York.

Feb. 5, 2009.

Jonathan R. Streeter, U.S. Attorney's Office, New York, NY, for Plaintiff.

Gerald Lawrence Shargel, Law Offices of Gerald L. Shargel, New York, NY, for Defendant.

*ORDER*

JED S. RAKOFF, District Judge.

How glorious to be an American citizen. In so many countries, the rights of citizens are not worth the paper they are printed on. But here, any citizen—good, bad, indifferent, famous, infamous, or obscure—

may call upon the courts to vindicate his constitutional rights and expect that call to be honored.

Here, citizen Marc Dreier, whom the Government accuses of colossal criminality, calls upon the Court to fulfill the pledge of the Eighth Amendment to the Constitution that "Excessive bail shall not be required." He argues that the bail set by Magistrate Judge Eaton, which required, among much else, that he post $10 million in cash to secure his release, is excessive, because all his funds have already been frozen by orders previously obtained by the Securities & Exchange Commission and by the U.S. Attorney's Office. The Government, for its part, argues that no conditions of bail can reasonably assure against what it considers to be a high risk of flight, and accordingly urges that bail be denied altogether. Following substantial briefing and a lengthy hearing, this Court, reviewing the matter *de novo, see United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985), concludes that such risk of flight as exists can be so minimized by the imposition of conditions that Dreier may likely meet as to warrant his release.

The Court of Appeals for the Second Circuit has succinctly stated what the Government must prove to mandate a defendant's pretrial detention in a case like this. "Because the law ... favors bail release, the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure

his presence in court." *United States v. Sabhnani,* 493 F.3d 63, 75 (2d Cir.2007) (citations omitted).[1]

At the time the defendant was first brought before Magistrate Judge Eaton, he was detained in part because of the Government's suggestion that, of the more than $400 million that Dreier allegedly had fraudulently obtained, tens of millions of dollars were missing. Transcript of bail hearing before Magistrate Judge Douglas F. Eaton on December 11, 2008 at 7–8. But at the hearing before this Court, Mark Pomerantz, Esq., the Receiver appointed by Judge Cederbaum in the parallel action brought by the Securities & Exchange Commission, stated his preliminary conclusion that there was no such "cash hoard" because, based on records provided by the defendant himself, the disposition of the great bulk of the funds in question could be accounted for. Transcript of the bail hearing on February 2, 2009 ("tr.") at 36.

Yet, while this may reduce the risk of flight, it hardly eliminates it. Whatever facts may ultimately emerge, the Government has carried its burden for the limited purposes of the bail hearing of showing that Dreier is not only a master of deceit and a doyen of dishonesty but the kind of person who, under stress, may resort to desperate measures. Indeed, for the limited purposes of the bail hearing, the defense does not challenge the allegations of the indictment that set forth in some detail Dreier's sophisticated frauds and his procurement of impersonation by his confederates. *See* tr. at 74–75. It appears, moreover, that Dreier has not limited the assumption of false identity—a *sine qua non* to any successful flight from justice—to his associates. With his allegedly fraudulent schemes in disarray, Dreier

---

1. The Government has expressly disclaimed reliance here on the alternative basis for pretrial detention, viz., clear and convincing evidence that the defendant's release poses a danger to another person or to the community.

himself, in an effort to obtain badly-needed funds, undertook to pose as a person he had met but minutes earlier—an act of brazen impersonation that his own counsel twice conceded was a "desperate act." *See* tr. at 14, 70.

Nor, it would seem, has Dreier been wholly candid with his counsel or the Court. Before Judge Eaton he "emphatically denie[d]," through his counsel, a trip to Turkey that the Government sought to characterize as evidence of his ties abroad, *see* transcript of bail hearing before Magistrate Judge Douglas F. Eaton on January 22, 2009 at 3–4; and it was only when, unexpectedly, the Government, which did not have Dreier's passport for the relevant period, developed alternative evidence of the travel, that Dreier, all too lamely, asserted through his counsel that he had simply forgotten the trip, **tr. at 31, 59–60.**

█ Furthermore, Dreier's motive to flee is palpable, for he faces potentially large sentences if convicted, his money and assets are either frozen or spent, his family ties appear strained, and he has become a pariah to the profession in which he once practiced, as well as to much of the community at large. Without multiplying examples further (but after careful consideration of all the evidence presented to the Court), the Court finds that the Government has more than satisfied its burden of proving by a preponderance of the evidence that Dreier, if released without conditions, would pose a genuine risk of flight. *See* 18 U.S.C. § 3142(g); *United States v. Chimurenga,* 760 F.2d 400, 403 (2d Cir. 1985) (stating that under the Bail Reform Act, the Court evaluating risk of flight is to consider "the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community").

█ But the bail package that Dreier himself proposes goes far to minimize this risk. Specifically, he has proposed the following conditions: (1) a $10 million personal recognizance bond that, while not secured by cash, will be co-signed by defendant's son, Spencer Dreier, and his mother, Mildred Dreier; (2) home detention, 24/7, in his East Side apartment, secured not only by electronic monitoring but by on-premises armed security guards, supplied by a company acceptable to the Government but paid for by the defendant's relatives; (3) elimination of computer access, surrender of all travel documents, and screening and searching of pre-approved visitors; (4) strict supervision by Pre–Trial Services; and (5) ongoing cooperation with the court-appointed Receiver in identifying and preserving all assets held directly or indirectly by defendant.

Of these, the most potentially efficacious, and controversial, is Dreier's proposal to have armed guards staying at his apartment at all times, authorized to prevent his leaving his apartment at any time except upon express prior Order of the Court. In *Sabhnani,* the Court of Appeals, in a footnote, raised, but did not reach, the question of whether such an arrangement gives people of means (or of access to means) an opportunity for release that poorer people could never obtain. *See Sabhnani,* 493 F.3d at 78 n. 18 (querying whether it is proper to "allow wealthy defendants to buy their way out by constructing a private jail"). It cannot be gainsaid that many kinds of bail conditions favor the rich, and, conversely, that there are many defendants who are too poor to afford even the most modest of bail bonds or financial conditions of release. This is a serious flaw in our system. But it is not a reason to deny a constitutional right to someone who, for whatever reason, can provide reasonable assurances against flight.

Indeed, the State of New York, by statute, specifically provides for the licensing of "bail enforcement agents" charged with precisely this kind of task. N.Y. Gen. Bus. §§ 70–89–a. A "bail enforcement agent" is defined as a person or company that is engaged in "the business of enforcing the terms and conditions of a person's release from custody on bail in a criminal proceeding, including locating, apprehending and returning any such person released from custody on bail who has failed to appear at any stage of a criminal proceeding to answer the charge before the court in which he may be prosecuted." N.Y. Gen. Bus. Law § 71(1–a). For that matter, a provision of the Bail Reform Act itself, § 3142(c)(1)(B)(I), contemplates that a defendant may be released into "the custody of a designated person[ ] who agrees to assume supervision . . . if the designated person is able reasonably to assure the judicial officer that the person will appear as required."

To be sure, a private security guard could face liability for using excessive force to prevent a defendant's flight, *see, e.g., People v. Roldan,* 222 A.D.2d 132, 647 N.Y.S.2d 179 (1st Dep't 1996), but this is just as true of a policeman or U.S. Marshal. The real difference between detention in a jail and in a guarded apartment is that a jail has bars and numerous other physical impediments to flight (and to communication with those who might assist a flight), whereas an apartment lacks such safeguards. But when one remembers that Dreier, on his own consent, will be confined to his apartment at all times, that any visitors, including his counsel, will have to be pre-approved, and that the guards will be authorized to use all reasonable force to prevent his escape, the possibility of his flight is substantially reduced.

Nevertheless, the Court, while mindful of the requirement that further conditions imposed to prevent flight must be the "least restrictive" necessary, 18 U.S.C. § 3142(c), nevertheless concludes that, in addition to the five conditions proposed by the defendant as outlined above, the following additional conditions are necessary to reasonably assure his appearance in court: (6) that the defendant expressly consent in writing to the use, by the armed security guards, of "temporary preventive detention and the use of reasonable force" to thwart any attempt to flee, *see Sabhnani,* 493 F.3d at 74; (7) that the costs of supplying the armed security guards for three months (estimated by defense counsel to be around $210,000) be paid in advance into an escrow account maintained by the United States Attorney's office; (8) that, contemporaneous with the defendant's return to his apartment, Government officers, with defendant's consent and assistance, remove from the premises any and all computers, cellphones, modems, and any other means by which the defendant may communicate electronically except by land-line telephone, as well as anything that might serve as a weapon (e.g., knives); (9) that the defendant maintain at his residence throughout the period of pretrial release a land-line telephone that has no call forwarding, modem, caller ID, call waiting, or portable cordless telephone connection; (10) that in connection with the electronic monitoring defendant has proposed, defendant wear such electronic monitoring device, and follow such electronic monitoring procedures, as specified by the Pre–Trial Services officer and that the defendant pay the cost of the electronic monitoring, and (11) that no visitors be permitted to visit the defendant without the express prior written permission of the Pre–Trial Services officer, given only after consultation with the U.S. Attorney's Office.

The Court is confident that this considerable set of conditions will be sufficient to

reasonably assure the defendant's appearance in court as required. At the same time, it is a set of conditions that the defendant may reasonably be expected to meet. Accordingly, it accords, not only with the Bail Reform Act, but with the Constitution of the United States.

Counsel for the parties are hereby directed to jointly prepare a proposed order or set of orders further specifying and providing for the effectuation of the conditions detailed above and to fax the order(s) to the Court for its review by no later than close of business on Friday, February 6, 2009, following which the Court will issue, by no later than Monday, February 9, 2009, its formal order particularizing the conditions of release.

SO ORDERED.