UNITED STATES of America

v.

**Piero ARENA, Carmelo Panzera, Salvatore Sciglitano et al., Defendants.**

**No. 94–CR–389.**

United States District Court, N.D. New York.

March 14, 1995.

**440**

Thomas J. Maroney, U.S. Atty., Albany, NY (Paul D. Silver, Asst. U.S. Atty., of counsel), for the U.S.

E. Stewart Jones, Troy, NY (David J. Taffany, of counsel), for defendant Sciglitano.

O'Connell & Aronowitz, Albany, NY, for defendant Panzera.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

Defendants **Carmelo Panzera** and **Salvatore Sciglitano** were detained by order of Magistrate Judge Smith after a pre-trial detention hearing held on December 24, 1994. Panzera and Sciglitano now come before the court seeking review of Judge Smith's detention orders under 18 U.S.C. § 3145(b).

### I. Background:

Both Defendants have been charged in the indictment with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine in violation of 28 U.S.C. §§ 841 and 846. If convicted of these offenses, both defendants face a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment.

The Second Circuit has declared that when defendants seek review of a magistrate judge's detention order a district court should fully reconsider the magistrate's denial of bail. In undertaking such review the district court should not simply defer to the judgment of the magistrate judge, but should reach its own independent conclusion. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (citing *United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir.1985); *United States v. Williams*, 753 F.2d 329, 331 (4th Cir.1985)). In short, such motions should be accorded substantially *de novo* review. *Id.* It is with these considerations in mind that the Court turns to the merits of these defendants' applications.

### II. Discussion:

■ The Court first notes that both defendants are faced with the statutory presumptions of dangerousness and risk of flight. Those presumptions arise from 18 U.S.C. § 3142(e), which states in relevant part:

> [s]ubject to rebuttal by the person, it shall be *presumed* that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more....

18 U.S.C. § 3142(e) (emphasis added). The Second Circuit has stated that "an indictment returned by a duly constituted and unbiased grand jury satisfies the Constitution as to the existence of probable cause that the defendant committed the crimes enumerated therein." *United States v. Contreras*, 776 F.2d 51, 54 (2d Cir.1985) (citing *Lawn v. United States*, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958)). Thus, in the case at bar, since an indictment was returned by a duly constituted grand jury, there is probable cause to believe that the defendants committed the acts alleged in the indictment. Accordingly, since the alleged offenses carry a potential maximum term of life imprisonment, it is presumed that these defendants pose a significant risk of flight as well as a danger to the community.

### (a). Defendant Carmelo Panzera:

Defendant Panzera claims that the Magistrate Judge erred when he found that Panzera had failed to rebut the statutory presumption of dangerousness. He points to the facts that he is a citizen of the United States; that he has resided in Kingston, New York for the past 26 years, wherein he owns a home valued in excess of $200,000.00 and a pizza business; that there is no evidence that his activities in the charged narcotics con-

spiracy were continuing beyond the arrests already made; that he is infirm because of his advanced age, diabetes and a blood platelet disorder, and speaks virtually no english; and that he has no known criminal record or history.

■ The government retains the burden of proving dangerousness by clear and convincing evidence even when the statutory presumption has been invoked. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991). Once a defendant introduces rebuttal evidence, however, the presumption does not disappear altogether, but rather continues to be weighed along with other factors. *Id.* The factors to be considered in assessing dangerousness are enumerated in § 3142(g) and include the nature and circumstances of the offense charged, the weight of the evidence against the defendant and the history and characteristics of the defendant and the nature and seriousness of the risk to the community. *See United States v. Chimurenga*, 760 F.2d 400 (2d Cir.1985).

■ The nature of Panzera's charged offense, § 3142(g)(1), weighs most heavily against his application. The government has alleged a wide-ranging, extensive international narcotics conspiracy. Not only does the crime charged "involve a narcotics drug," 18 U.S.C. § 3142(g)(1), it involves the importation of extremely large quantities of cocaine into this country. Such a conspiracy is a presumptively dangerous activity. *Rodriguez*, 950 F.2d at 89. While in no way minimizing the seriousness of Panzera's alleged activity, however, review of the hearing transcript and the government's submissions reveals that Panzera's role is more properly characterized as a "facilitator" or "go-between" as compared to the his alleged co-conspirators who appear to be primary movers in the alleged transactions. (*See* Panzera Detention Hrng. Transcript. at 8–9, 11–12).

As to the weight of the evidence against Panzera, § 3142(g)(2), the government proffers numerous wiretapped phone conversations where the defendant has acted as a facilitator or "middleman" in two separate drug transactions involving 25 kilograms and over 40 kilograms of cocaine. The government further claims that these conversations reveal intimate knowledge of the details of these drug transactions.

As to Panzera's history and characteristics, § 3142(g)(3), defendant points to the complete absence of a past criminal record. The government points to *Rodriguez* for the proposition that the absence of a criminal record does not compel a conclusion of non-dangerousness. *See Rodriguez*, 950 F.2d at 85. The government also attempts to rebut Panzera's showing by indicating that it has in its possession intelligence reports from Canadian law enforcement authorities which indicate that Panzera was "at least suspected of criminal activity back as far as the 1970's." *See* Panzera Detention Hrng. Transcript. at 9. In light of the governments failure to either provide the Court with these reports or to clarify by proffer the nature of the reported criminal activity, the time frame of the reports or the basis for such suspicion, the Court can give little weight to these reports.

The Court also finds that Panzera is a 73 year old man in poor health. Nothing in the record shows an inclination to violence. While Panzera's daughter has been arrested in connection with this conspiracy she resides in Canada, not in Kingston with the defendant. Apart from the defendant's phone calls from his home, there is no showing that any relevant part of the conspiracy or narcotics transactions centered around Panzera's residence or locality.

The final factor, the nature and seriousness of the danger to any person or the community that would be posed by the release, § 3142(g)(4), poses the ultimate question. In light of the large amounts of cocaine involved and the international and complex nature of the conspiracy the Court finds itself presented with an exceedingly close question: these charges raise a strong presumption of dangerousness. The presumption is mitigated somewhat by Panzera's alleged lesser role in the conspiracy and in the absence of a criminal history, coupled with no evidence in the record from which the Court can draw an inference that Panzera will continue his alleged narcotics activity. *See United States v. Hall*, 651 F.Supp. 13

(N.D.N.Y.1985). The Court is also cognizant of Panzera's advanced age and documented medical problems. Taken together, the Court cannot say that the government's evidence shows clearly and convincingly that Panzera represents a danger to the community.

The Department of Probation's evaluation of the relevant factors found that Panzera represented a moderate risk of flight. (*See* Panzera Pretrial Services Report, § 5). That department balanced Panzera's ties to Canada and Italy (the defendant speaks little English) and his obvious incentive to flee considering his age and the severity of the sentence he faces, with the his 26 years residence in New York and his ties to the area. That office recommended that the defendant post a $200,000.00 collateral bond and be placed on pretrial Services supervision with various conditions. Magistrate Smith also found that various conditions, including posting of property would "probably secure his return to Court." (*See* Panzera Detention Hrng. Transcript. at 13). Accordingly, after examination of the basis for these conclusions the Court adopts the views of Magistrate Judge Smith and Pretrial Services as to Panzera's risk of flight.

Therefore, for all the foregoing reasons, the Magistrate Judge's order of detention is vacated and Panzera is granted pretrial release subject to the terms and conditions of this order.

**(b). Defendant Sciglitano:**

Consideration of the 1342(g) factors as to defendant Sciglitano presents a far stronger showing of dangerousness and therefore, supports continued detention.

■ The nature of the charges against Sciglitano are likewise extremely serious and involve the same disturbingly large amounts of cocaine. Sciglitano's alleged involvement however far exceeds Panzera's. The government proffers that Sciglitano physically received $100,000.00 in Canadian currency, exchanged that currency for American Currency and then physically transported that money to Florida to make the down payment on twenty-five kilograms of cocaine. The government proffers that Sciglitano traveled to Colombia and other South American countries in furtherance of the narcotics transactions and directly dealt with a group of Colombians who later shipped forty-six kilos which were seized by the Royal Canadian Mounted Police. In short the government's evidence strongly supports a finding that Sciglitano was deeply and actively involved in this alleged large-scale conspiracy and possesses knowledge of and contacts with international sources of supply.

The government further proffers evidence that in 1993 Sciglitano utilized construction equipment in preparation for building a landing strip in this District for the importation of cocaine. (*See* Sciglitano Detention Hrng. Transcript. at 10). Such a showing raises a strong inference of ongoing and continuing narcotics importation activity. In contrast to the lack of clarity regarding the inception and duration of Panzera's involvement, the government emphasizes its evidence that Sciglitano's involvement spanned the entire duration of the conspiracy, likewise supporting the Magistrate's inference of danger to the community. Taken together the evidence convincingly supports a finding of Sciglitano's pervasive involvement in large-scale narcotics transactions.

As to the evidence against Sciglitano, the government characterizes it as "overwhelming." In this defendant's case the government proffers both wiretapped telephone conversations, police surveillance of Sciglitano's activity, and a cooperating confidential informant.

As to Sciglitano's history and characteristics it appears that he has a record of arrests and indictment in reference to bad checks and charges of fraud stretching from 1990 to 1992. (*See* Sciglitano Detention Hrng. Transcript at 5; Sciglitano Pretrial Services Report at 3–4). While counsel at that hearing disputed some of these charges, characterizing them as "minor" and indicating that the indictment had been dismissed upon restitution, the Court notes that unlike Panzera, Mr. Sciglitano cannot point to the complete absence of a criminal record in his attempt to rebut the statutory presumptions.

Sciglitano points to his children and his strong family ties but, admirable as these may be, such factors do little to rebut the presumption of dangerousness from this high level narcotics trafficking conspiracy. *See Rodriguez,* 950 F.2d at 89. Furthermore, the government proffers wiretap evidence which shows that in his absence, Sciglitano's wife acted as a relay, passing information from Columbian narcotics suppliers to Canadian recipients which was required to complete a narcotics shipment. This evidence convinces the Court that nothing in defendant's plea to be returned to his family rebuts his presumptive danger to the community by virtue of his alleged large scale narcotics trafficking. This evidence likewise clearly goes to the pervasiveness and extent of this defendant's involvement in illegal activity and minimizes his attempts to mitigate the presumptions.

Finally and perhaps most dispositively the government proffers wiretapped conversations indicating that this defendant intended to continue doing business with his Columbian source of supply even after the seizure of forty-five kilograms at the end of this investigation. (*See* United States' Memo. of Law at 4). Evidence of an intent to continue trafficking, coupled with the presumption of § 3142(e) weighs strongly against Sciglitano in this Court's assessment of the government's showing.

Thus, defendant's failure to rebut the § 3142 presumption coupled with this Court's analysis of the government's clear and convincing evidence regarding the statutory factors in § 3142(g) fully supports the Magistrate's determination that "if released [Sciglitano] would constitute a danger to the community." (*See* Magistrate Smith's *Order of Detention,* pt. II). This Court has considered all the foregoing evidence and submissions, as well as the Memorandum of Law and Affirmation of Sciglitano's attorney, and likewise independently concluded that no conditions or combinations of conditions of release will ensure the safety of the community.

### III. Conclusion:

Magistrate Judge Smith's order of detention as to Salvatore Sciglitano will remain in effect and for the foregoing reasons, it is hereby

**ORDERED,** that defendant Sciglitano's motion that he be released on reasonable bail is **denied.**

Magistrate Judge Smith's Order of Detention as to Carmelo Panzera is vacated and for the foregoing reasons it is hereby

**ORDERED,** that defendant Panzera be released subject to the following conditions:

1). That he post a $200,000.00 collateral bond;

2). That he surrender his passport;

3). That he be placed on Pretrial Services Supervision and report weekly to Pretrial Services;

4). That his travel be restricted in that he not travel outside his home county of ULSTER County, New York, except for: travel to and from Court for appearances connected to this prosecution; travel to and from Pretrial Services for his weekly appearance; and that he travel outside ULSTER County otherwise, only upon advance notification to and with the permission of Pretrial Services;

5). That he does not possess a firearm;

6). That he comply with all additional conditions of release

indicated in the Order Setting Conditions of Release which will be prepared at such time as he proffers and receives judicial approval of his collateral Bond.

**IT IS SO ORDERED.**